Hearing Date: To be Determined
Objection Deadline: August 29, 2025 at 4:00 p.m. (Prevailing Eastern Time)
Reply Deadline: September 12, 2025 at 12:00 p.m. (Prevailing Eastern Time)

DAVIS POLK & WARDWELL LLP

450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Elliot Moskowitz
Daniel J. Schwartz
Marc J. Tobak

*Counsel to Plaintiff Digital Currency Group, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Genesis Global Holdco, LLC, et al.,<br><br>                    Debtors.[1] | Case No. 23-10063 (SHL) |
| DIGITAL CURRENCY GROUP, INC.,<br><br>                    Plaintiff,<br><br>          - against -<br><br>VINCENT FALCO, STEPHEN H. SOKOLOWSKI, AND CHRISTOPHER H. SOKOLOWSKI<br><br>                    Defendant. | Adversary Pro. No. 25-01111-SHL |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION

---

[1] The Wind-Down Debtors in these cases, along with the last four digits of each Wind-Down Debtor's registration number in the applicable jurisdiction, are as follows: Genesis Global Holdco, LLC (8219), Genesis Global Capital, LLC (8564), and Genesis Asia Pacific Pte. Ltd. (2164R).

## TABLE OF CONTENTS

<u>PAGE</u>

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT .................................................................................................... 3

I.    The Sokolowski Complaints Improperly Assert Estate Claims ................................. 3

    A.    The Objection Illustrates that the Sokolowskis Assert Estate Claims
        Premised on Generalized Allegations ................................................. 6

    B.    Whether the Debtors Could Bring a UTPCPL Claim Is Irrelevant:  The
        Debtors Are Pursuing Claims Premised on the Same Allegations ................... 8

II.    The Sokolowskis Should Be Enjoined From Pursuing Estate Claims ..................... 11

    A.    The Sokolowskis' Suits Irreparably Harm the Estates and DCG ................... 11

    B.    A Balancing of the Harms and the Public Interest Favor Issuance of the
        Injunction ................................................................................ 12

    C.    No Bond Is Appropriate Because the Sokolowski Suit is Improper ............... 13

    D.    The Doctrine of Laches Does Not Apply Because DCG Acted
        Promptly .................................................................................. 14

III.    The Sokolowskis' Alternative Arguments Offer No Reason to Decline To
    Issue an Injunction ..................................................................................... 15

CONCLUSION .................................................................................................. 17

# TABLE OF AUTHORITIES

C<small>ASES</small>

P<small>AGE(S)</small>

*In re Adelphia Commc'ns Corp.*,
   345 B.R. 69 (Bankr. S.D.N.Y. 2006) ........................................................................ 16

*In re Bernard L. Madoff Inv. Sec. LLC.*,
   721 F.3d 54 (2d Cir. 2013) .......................................................................................... 4

 *In re Calpine Corp.*,
   365 B.R. 401 (S.D.N.Y. 2007) ................................................................................... 10

*Doctor's Assocs., Inc. v. Stuart*,
   85 F.3d 975 (2d Cir. 1996) ................................................................................... 13, 14

*Doctor's Assocs., Inc. v. Distajo*,
   107 F.3d 126 (2d Cir. 1997) ...................................................................................... 13

*In re Emoral, Inc.*,
   740 F.3d 875 (3d Cir. 2014) .................................................................................... 7, 8

*In re Fairfield Sentry Ltd*,
   147 F.4th 136 (2d Cir. 2025) ....................................................................................... 9

*Genesis Global HoldCo, LLC v. Digital Currency Grp., Inc.*,
   No. 25-cv-733 (D. Del. June 12, 2025) ........................................................................ 5

*Glenny v. Langdon*,
   98 U.S. 20 (1878) ......................................................................................................... 3

*Harrington v. Purdue Pharma L.P.*,
   603 U.S. 204 (2024) ................................................................................................... 17

*Int'l Controls Corp. v. Verco*,
   490 F.2d 1334 (2d Cir. 1974) *cert. denied sub nom.*, 417 U.S. 932 (1974) ................ 13

*In re Lehman Bros. Inc.*,
   617 B.R. 231 (Bankr. S.D.N.Y. 2020), *aff'd sub nom. In re Lehamn Bros. Holdings
   Inc.,* No. 19-3245, 2021 WL 4127075 (Bankr. S.D.N.Y. 2020)................................... 14

*Mastrovincenzo v. City of New York*,
   435 F.3d 78 (2d Cir. 2006).......................................................................................... 16

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
   599 F.3d 102 (2d Cir. 2010)........................................................................................ 15

*In re Port Morris Tile & Marble LP*,
    645 B.R. 500 (Bankr. S.D.N.Y. 2022) ........................................................................ 10

*Purdue Pharm. L.P. v. Massachusetts (In re Purdue Pharm. L.P.)*,
    666 B.R. 461, 467 (Bankr. S.D.N.Y. 2024) ................................................................ 11

*In re Revlon, Inc.*,
    No. 22-10760 (DSJ), 2023 WL 2229352 (Bankr. S.D.N.Y. Feb. 24, 2023) ............... 10

*In re Schimmelpennick*,
    183 F.3d 347 (5th Cir. 1999) ....................................................................................... 5

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    429 B.R. 423 (Bankr. S.D.N.Y. 2010) ........................................................................ 11

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    655 B.R. 149, 179 (Bankr. S.D.N.Y. 2023) ................................................................ 14

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*,
    884 F.2d 688 (2d Cir. 1989) .................................................................................... 7, 8

*In re Tronox Inc.*,
    855 F.3d 84 (2d Cir. 2017) ........................................................................ 4, 5, 7, 8, 9

*Zuckerman v. Metro. Museum of Art*,
    928 F.3d 186 (2d Cir. 2019) ....................................................................................... 14

STATUTES & RULES

11 U.S.C. §544(b) ............................................................................................................. 3
11 U.S.C. §105(a) ............................................................................................................ 16

## PRELIMINARY STATEMENT

The Sokolowskis should be enjoined from pursuing their Pennsylvania and Connecticut complaints. Their own Objection[2] demonstrates that their complaints assert derivative claims that are property of the estate. If not enjoined, the Sokolowskis' suits will continue to interfere with administration of the estates, force DCG to bear the costs of improperly filed litigation, and invite other Genesis customers to pursue claims competing with those of the estates.

The dispute before the Court is quite narrow. In sum, the Sokolowskis argue in their Objection that the Pennsylvania consumer protection claim they have asserted against DCG (the sole cause of action asserted in the Pennsylvania action) must be direct because, under Pennsylvania law, only a consumer—and not the Debtors—could bring that precise claim. And, they argue, they have adequately alleged that claim because the Sokolowskis relied to their detriment on statements by and about Genesis.

But the Court need not—and indeed should not—wade into Pennsylvania law or the merits of the consumer protection claim to determine that the Sokolowskis are pursuing derivative claims exclusively reserved to the Debtors. Under controlling, and undisputed, Second Circuit law, whether a claim is derivative or direct turns on the factual allegations underlying that claim, not on the labels plaintiffs assign to that claim, or, critically, whether the Debtors could bring that precise cause of action. This makes sense: Where individual plaintiffs' claims arise out of conduct directed at the Debtors or their creditor body in general and overlap with claims the debtors may bring for the benefit of the estate, such claims are derivative—however styled. The alternative would

---

[2] Adv. ECF No. 20.

1

be a chaotic race to the courthouse in which the Debtors and their creditors compete to secure the same remedies for the same alleged conduct through causes of action differing only in form. That is precisely what bankruptcy law seeks to avoid.

The Sokolowskis' Objection demonstrates that their claims are indubitably derivative, emphasizing that they allegedly relied on a balance sheet provided by Genesis to many of its lenders and on communications they had with Genesis representatives. Having had every opportunity to point to allegations of a direct connection to DCG, they fail to adduce any, instead pointing to the Debtors' allegation that DCG acted to harm the Debtors' customers as a whole—a paradigmatic example of a derivative claim that only the estate can pursue.

It is equally clear that the Sokolowskis should be enjoined from continuing to pursue derivative claims. Their suit irreparably harms the Debtors by improperly using estate property and by interfering with this Court's jurisdiction over estate property and its administration. It also irreparably harms DCG by forcing DCG to bear the costs of improper litigation. The Sokolowskis do not contest, and therefore concede, that the balance of harms and public interest weigh in favor of an injunction against interference with estate property contrary to the law, the Plan, and the Confirmation Order.

Finally, the grab bag of arguments the Sokolowskis make in an attempt to avoid an injunction have little, if any, bearing on the issues before the Court. DCG does not seek a third-party release, or an "extension of the automatic stay," or any of the other sundry forms of relief that the Sokolowskis appear to misunderstand as relevant to this case. Nor is any discovery regarding DCG's communications with the Debtors, or the Sokolowskis' communications involving the LOC, necessary or relevant. The question

before the Court is a pure question of law and application of that law to the allegations of

the Sokolowski Complaints; discovery into communications between the parties has no

potential bearing on the adjudication of a pure legal issue.

　　　For all of these reasons, and the reasons set forth in DCG's Opening Brief, the

Motion should be granted and the Sokolowskis should be enjoined from prosecuting their

claims.

## ARGUMENT[3]

### I.　The Sokolowski Complaints Improperly Assert Estate Claims

　　　Bankruptcy law, the confirmed Plan, and the Confirmation Order all provide that

the Debtors alone may pursue estate causes of action.  As explained in DCG's Opening

Brief, estate causes of action plainly include those that state law vests exclusively in the

Debtors, such as causes of action for breaches of fiduciary duty. (Opening Br. at 16.)

Critically, however, the Debtors' exclusive authority in bankruptcy extends beyond

causes of action that only the Debtors could bring under state law.  Under Section 544(b)

of the Bankruptcy Code—and practice long predating the Code[4]—only the estate may

pursue avoidance actions that creditors would otherwise control, to avoid competing and

---

[3] Citations in the form of "Adv. ECF No." reference electronic filings in the above-captioned adversary proceeding, *Digital Currency Grp., Inc. v. Falco et. al. (In re Genesis Global HoldCo, LLC)*, Adv. Pro. No. 25-01111-SHL (Bankr. S.D.N.Y. July 8, 2025).  Citations in the form of "ECF No." reference electronic filings in the above-captioned chapter 11 proceeding, *In re Genesis Global Holdco, LLC*, No. 23-10063 (SHL) (Bankr. S.D.N.Y.)  Citations in the form of "Ex. A" are to Exhibits to the Declaration of Marc J. Tobak in Support of Plaintiff's Motion for a Preliminary Injunction, dated July 8, 2025 [ECF No. 3].  Capitalized terms used but not defined herein have the meaning ascribed to them in DCG's Memorandum of Law in Support of Motion for a Preliminary Injunction [Adv. ECF No. 4] (the "**Opening Brief**").

[4] *E.g. Glenny v. Langdon,* 98 U.S. 20, 28 (1878) (creditor could not recover property fraudulently transferred by bankrupt; only the trustee can pursue claims "because [creditors'] remedies are absorbed in the great and comprehensive remedy under the commission by virtue of which the assignee is to collect and distribute among them the property of their debtor.")

chaotic litigation by individual creditors, and to ensure fair distribution of any litigation

proceeds.  For the same reasons, the estate also has sole authority to pursue "generalized"

claims that seek to hold third parties liable for harm that a third party caused to the

debtors, as well as harm to creditors caused by the debtors in which the third parties

allegedly participated.  This makes good sense.  Just as the estate's ability to avoid and

recover fraudulent transfers would be impaired if creditors could pursue individual claims

competing with the estate's claims for the benefit of creditors as a whole, the estate's

ability to pursue its own causes of action for the benefit of creditors suffers if creditors

remain free to seek individual redress for collective injury.  The Second Circuit explained

as much in *Tronox:*  the estate is "conferred the right to recover for derivative,

generalized claims" because "[t]he whole point of channeling claims through bankruptcy

is to avoid creditors getting ahead of others in line of preference and to promote an

equitable distribution of debtor assets."  *In re Tronox Inc.*, 855 F.3d 84, 106 (2d Cir.

2017).

DCG's Opening Brief also explained that in determining whether a claim is direct

and particularized, or derivative and generalized, courts look past the cause of action the

plaintiff asserts, and the labels the plaintiff assigns, and instead evaluate (a) whether the

plaintiff's alleged harm is particularized to the individual plaintiff-creditor, or shared by

the body of all creditors, or all similarly situated creditors, and (b) whether the estate

could pursue or is pursuing causes of action predicated on identical alleged facts to those

in the plaintiff's suit.  *E.g.*, *In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 89 (2d

Cir. 2013) (instructing courts to "inquire into the factual origins of the injury, and, more

importantly, into the nature of the legal claims asserted"); *Tronox*, 855 F.3d at 99

(holding claims were derivative where they were "based on rights 'derivative' of, or 'derived' from, the debtor's"); *see also In re Schimmelpenninck*, 183 F.3d 347, 360 (5th Cir. 1999) (defining derivative claims as "[a]ctions by individual creditors asserting a generalized injury to the debtor's estate, which ultimately affects all creditors"); (Opening Br. at 16-17).  The point of this inquiry is <u>not</u> to decide whether a plaintiff could, under state law and some hypothetical set of facts, bring such a claim against a third-party defendant.  Instead, the point is to determine whether a claim turns on conduct that the defendant directed at the debtors or at the debtors' creditors generally, and whether the estate could pursue or has already pursued its own claims to seek redress for creditors as a whole.  Where the answer is yes, bankruptcy law provides that the estate is the only proper litigant.  *Tronox*, 855 F.3d at 106 ("the trustee is conferred the right to recover for derivative, generalized claims; only the estate is charged with ensuring equitable distribution of estate assets.")

The Sokolowskis challenge none of this in their Objection—nor could they, as it is a plain statement of controlling Second Circuit law.  Their sole response is that their only claim in the Pennsylvania action must be direct because a UTPCPL claim may be pursued only by natural persons who have purchased a good or service for "personal, family, or household purposes," (Obj. at 14, 18), and that they "trace a straight line of personal reliance and loss that is unique to the Sokolowskis," (Obj. at 9).[5]  In reality,

---

[5] The Sokolowskis do not present <u>any</u> argument why the claims they assert in their Connecticut complaint—violation of the Connecticut Unfair Trade Practices Act, fraud, negligent misrepresentation, civil conspiracy, aiding and abetting fraud, and unjust enrichment—are not derivative claims.  Nor could they; Debtors, in fact, have asserted those other claims in their litigation against DCG.  *See* Notice of Removal Ex. A, *Genesis Global HoldCo, LLC v. Digital Currency Grp., Inc.*, No. 25-cv-733, at Ex. A (D. Del. June 12, 2025) [ECF No. 1-1].  Instead, the Sokolowskis argue that because they have requested that their Connecticut action be stayed pending resolution of the Pennsylvania action, it is not "ripe" for this

however, their Objection conclusively demonstrates that their claim is <u>derivative</u>:  The

"straight line of reliance" they trace goes directly and exclusively through <u>Genesis</u> alone,

has only a generalized (if any) connection to DCG, and relies on the same alleged

conduct of DCG that underlies the claims the Debtors are pursuing for the benefit of their

estates.

### A.    The Objection Illustrates that the Sokolowskis Assert Estate Claims Premised on Generalized Allegations

The Sokolowski Complaints seek redress for harms they allegedly suffered as a

result of misconduct by <u>Genesis</u>.  (Opening Br. 18-22.)  The Objection amply illustrates

this point.  It fails to identify a single allegation in either complaint that DCG ever

interacted in any way with the Sokolowskis or acted or failed to act in any manner, even

generally, directed to the Sokolowskis.  Instead, the Objection repeatedly highlights

allegations that the Sokolowskis' alleged injuries were caused by <u>Genesis</u>.  Examples of

such statements in the Sokolowskis' Objection include:

- The Sokolowskis' LLC, Cryptocurrency Management LLC ("CM") "is the entity associated with the Sokolowskis' <u>Genesis</u> relationship."  (Obj. at 6.)

- "<u>Genesis's</u> own employees suggested an LLC solely to aggregate household funds to bypass deposit minimums."  (Obj. at 6.)

- "<u>Genesis's</u> balance sheet [was] dispositive to the Sokolowskis' choice to renew with Genesis."  (Obj. at 10.)

- "Stephen Sokolowski requested <u>Genesis's</u> balance sheet and received an email at 1:49pm from a <u>Genesis</u> representative attaching a sheet that listed $1.726 billion of 'Other Assets' under 'Current Assets.'"  (Obj. at 10.)

- "Stephen Sokolowski discussed the balance sheet with <u>Genesis</u> representative Griffin Tiedy on a Telegram voice call while viewing the document."  (Obj. at 10.)

---

Court's review.  (Obj. at 2-3.)  But the stay has no bearing on whether the causes of action asserted in their
Connecticut Complaint are direct or derivative, and that issue is properly before the Court.

- The Sokolowskis' "losses were caused by the deceptive balance sheet" shared with them by <u>Genesis</u>. (Obj. at 11.)

DCG is mentioned only once in the Sokolowskis' recital of their allegations (Obj. at 10-11), and even then, only as the obligor on the promissory note which <u>Genesis</u> allegedly misclassified on a balance sheet that <u>Genesis</u> employees allegedly stamped for and shared with the Sokolowskis. (*See* Obj. 10 ("The Sokolowskis allege that the vast majority of that line item was a $1.1 billion, unsecured, 10-year DCG promissory note, misclassified as current and thereby overstating liquidity and solvency."); *see also* Ex. C (Sokolowski Compl.) at ¶¶ 11, 94, 97 (alleging CM relied on the Genesis balance sheet provided to it by Genesis employees with misclassified the promissory note entered into between DCG and Genesis); Ex. D (Conn. Compl.) at ¶¶ 19, 123, 127 (same).) If that were not clear enough—and it is—the Sokolowskis also highlight that their claim is premised on "bespoke, one-to-one communications" <u>with Genesis</u>, not DCG. (Obj. at 11.) As explained in the Opening Brief, allegations that DCG issued a promissory note <u>to Genesis</u>, or engaged in conduct directed at Genesis, which in turn caused injury to Genesis's creditors such as CM (and, through CM, the Sokolowskis), are exactly the kind of generalized allegations that could be made "by any creditor of the debtor," and are therefore derivative. *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989); (Opening Br. 18-22).

That the Sokolowskis suffered their own injuries from Genesis's bankruptcy is of no moment. (Obj. at 11-12.) Every creditor in a bankruptcy has an individual claim against the debtor. And the personal injury plaintiffs in *Tronox* and *Emoral* certainly alleged individualized bodily injury underlying their claims. *Tronox*, 855 F.3d at 90-91; *In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014). What made their claims derivative is

7

that they alleged that the defendant's conduct was directed at the debtors or at the

debtors' creditors generally, and that the plaintiffs' individual injuries resulted from

defendant's generalized conduct.  *Tronox*, 855 F.3d at 103-04 (personal injury claims

premised on holding defendant liable as successor and alter ego of debtors); *Emoral*, 740

F.3d at 882 (same); *see also St. Paul*, 884 F.2d at 701-06 (claims rested on alter ego

liability and demonstration that defendant allegedly misused debtor's assets).  The

Sokolowskis fail to allege that DCG directed any conduct at them, as opposed to conduct

directed at Genesis or at the body of Genesis's customer creditors as a whole.  They

allege no link between their injuries and DCG other than that DCG injured <u>Genesis</u> by

allegedly mismanaging it or that DCG injured Genesis's customer-creditors as a whole by

allegedly participating in or facilitating Genesis's alleged misconduct.  Because their

claims rest on DCG conduct directed to Genesis or its creditors in general, their claims

are classically derivative claims that only the Debtors may pursue.  *See, e.g.*, *St. Paul*,

884 F.2d at 700; (Opening Br. at 15-18.)

### B.  Whether the Debtors Could Bring a UTPCPL Claim Is Irrelevant:  The Debtors Are Pursuing Claims Premised on the Same Allegations

The Sokolowskis argue that their claim must be direct because Pennsylvania law

does not allow the Debtors to assert a UTPCPL claim, or allow such claim to be assigned

or otherwise transferred from the Sokolowskis to the Debtors.  Even if this were correct,

however, it misses the point; this Court need not and should not address the merits of the

Sokolowski's UTPCPL claim to determine that that claim is derivative.[6]  As explained in

---

[6] In its reply brief in support of its motion to dismiss the Pennsylvania complaint, DCG argued that UTPCPL claims <u>can</u> be assigned under Pennsylvania law, and to the extent the Sokolowskis ever held such a claim, it was assigned to a third party.  Reply Memorandum of Law in Support of Motion to Dismiss at 6-10, *Sokolowski v. Digital Currency Group, Inc.*, No. 4:25-cv-00001-PJC (M.D. Pa. July 1, 2025) [ECF No. 52].  Again, however, this question is not before this Court on the instant motion.

DCG's Opening Brief (Opening Br. at 16-18) and above, the estate is the sole party that may properly bring a derivative action because allowing creditors to seek recovery for generalized claims in competition with the estate and one another would undermine the Bankruptcy Code's purposes of efficient and equitable distribution. *Tronox*, 855 F.3d at 106. Courts therefore look to the factual allegations of a complaint to assess whether it asserts generalized harm, and, furthermore, evaluate whether the estate is pursuing claims premised on the same alleged facts for the benefit of all creditors. *See Madoff*, 740 F.3d at 91; *Tronox*, 855 F.3d at 100 ("labels are not conclusive, since plaintiffs often try, but are not permitted, to plead around a bankruptcy.")

Here, the very same alleged conduct of DCG underlies both the Debtors' complaints against DCG for allegedly injuring Genesis and its creditors, and the Sokolowskis' complaints against DCG for allegedly causing or facilitating Genesis's conduct that allegedly injured them. (*See* Opening Br. at 22-25 (comparing allegations in the Debtor Complaints with allegations in the Sokolowski Complaints).) Given the opportunity to point to a non-overlapping allegation of conduct of DCG directed specifically at Sokolowskis, they failed to do so, and instead only pointed to Genesis's allegations that DCG acted to harm Genesis creditors in general. (Obj. at 18.) It does not matter that the Debtors are pursuing DCG for the same conduct using different causes of action. The Second Circuit and courts therein have routinely rejected the argument that a claim is necessarily direct if the debtor (or trustee) cannot pursue the same exact cause of action.[7] In *Madoff*, for example, the court concluded that even though the estate's

---

[7] More generally, the idea that bankruptcy law may prevent a plaintiff from pursuing individual claims that overlap with estate claims is well established and routinely applied in a variety of contexts. For example, the Second Circuit has repeatedly held that section 546(e)'s limitation on the avoiding powers of

representative could not assert precisely the same cause of action asserted by the plaintiffs, the plaintiffs' claims were derivative because they were derived from misconduct which the debtor could, and did, properly pursue for the benefit of all creditors. *Madoff*, 740 F.3d at 96. In *In re Port Morris Tile & Marble LP*, 645 B.R. 500, 515 (Bankr. S.D.N.Y 2022), Chief Judge Glenn explained that "a creditor's claim against a third party is not particular simply because the trustee cannot bring the exact claim as the creditor . . . the proper analysis . . . involves a comparison between the harms that are [the] subject of the creditors' claim and the harms that are actionable via the trustee's claims." Likewise, Judge Jones recently concluded that whether state law vests a certain claim in an individual or the debtor does not by itself make a claim direct; a claim is derivative if it would "usurp estate rights and interests" to pursue actions for the benefit of the estate as a whole. *In re Revlon, Inc.*, No. 22-10760 (DSJ), 2023 WL 2229352 at *14, (Bankr. S.D.N.Y. Feb. 24, 2023) (citing and quoting *In re Port Morris Tile & Marble LP*). Whether some other hypothetical plaintiff could assert, on some set of hypothetical facts, a direct UTPCPL claim against DCG is irrelevant. All the Court needs to decide here to conclude that the Sokolowskis' claims are derivative is that they seek to recover from DCG based on generalized allegations of DCG conduct towards Genesis and its creditors as a whole, which underlie the complaints that Genesis is already pursuing in Delaware and in this Court.

---

a "trustee" also bars third parties from pursuing claims that in substance overlap fraudulent transfer claims. *E.g.*, *In re Fairfield Sentry Ltd.*, 147 F.4th 136, 161 (2d Cir. 2025).

**II.      The Sokolowskis Should Be Enjoined From Pursuing Estate Claims**

The Sokolowskis are improperly pursuing estate claims and should be enjoined

from doing so.  Each of the relevant equitable factors weigh in favor of such relief.  DCG

has demonstrated irreparable harm, and that the balance of equities and public interest

favor an injunction.  (Opening Br. at 15); *see also In re Calpine Corp.*, 365 B.R. 401, 409

(S.D.N.Y. 2007) (applying the "traditional preliminary injunction standard as modified to

fit the bankruptcy context"); (Obj. at 4 (setting forth the same preliminary injunction

standard).)

**A.   The Sokolowskis' Suits Irreparably Harm the Estates and DCG**

The Sokolowskis argue that irreparable harm may not be "presumed."  (Obj. at 2,

4, 35.)  DCG has not asked the Court to presume any such harm; to the contrary,

irreparable harm is amply demonstrated by the Sokolowskis' pursuit of claims that only

the estates may pursue.  Such infringement of the estates' property and this Court's

exclusive jurisdiction over estate property constitute irreparable harm, as DCG

demonstrated in its Opening Brief and as the Sokolowskis fail to dispute.  (Opening Br.

25-27; Obj. at 35); *e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 429

B.R. 423, 437 (Bankr. S.D.N.Y. 2010) (enjoining creditor prosecution of derivative

claims because such actions "have the potential to substantially undermine this Court's

jurisdiction" through distribution of proceeds of estate claims in excess of creditors'

ratable share), *aff'd Madoff*, 740 F.3d at 81; *Purdue Pharm. L.P. v. Massachusetts (In re*

*Purdue Pharm. L.P.)*, 666 B.R. 461, 467 (Bankr. S.D.N.Y. 2024) (Lane, J.) (granting

preliminary injunction where the estates' similar causes of action constituted the "most

valuable asset" of the *res*).  Additionally, the Sokolowskis' argument that "DCG cannot

carry its burden" of proving irreparable harm in light of "Falco's dismissal and [DCG's

11

refusal of the] Debtors' public offer of abeyance," (Obj. at 35), is entirely opaque. That Falco dismissed his suit does nothing to mitigate the harm that the Sokolowskis' continued litigation would cause—or the harm that may ensue from inevitable copycat suits if the Sokolowskis' cases are allowed to move forward.

### B. A Balancing of the Harms and the Public Interest Favor Issuance of the Injunction

Allowing the Sokolowskis to continue prosecuting estate causes of action in two separate fora would be fundamentally unfair to the Debtors, their creditors, and DCG, and inconsistent with basic principles of bankruptcy law. (Opening Br. at 27-28.) The Sokolowskis offer no meaningful response; instead they argue that the balance of the harms and public interest favor building a "record of communication" through discovery (Obj. at 32-33).

The Sokolowskis agree that the legal issue before the Court does not require any discovery or consideration of the merits of the Sokolowskis' underlying claims. (Obj. at 4 ("[t]his PI motion turns on a threshold merits question that is purely legal").) Nevertheless, they ask the Court to authorize wide-ranging discovery into a variety of entities and events unassociated with the matter before the Court because, they argue, discovery into communications about the "narrative" underlying DCG's showing of irreparable harm and the "attitudes of all parties" could reveal "that the Sokolowskis' Pa. claim is direct." (Obj. at 32, 33.) Not so. No "narrative" of communications among litigants could transform their derivative claims into direct claims or inform the Court's

legal analysis, or demonstrate that the equities or public interest favor continued pursuit

of their Pennsylvania and Connecticut actions.[8]

### C.  No Bond Is Appropriate Because the Sokolowski Suit is Improper

DCG's Opening Brief demonstrated that Rule 65(c) vests the Court with "wide

discretion" to determine whether any bond is a necessary condition to imposing a

preliminary injunction.  (Opening Br. at 28 (citing *Doctor's Assocs., Inc. v. Stuart*, 85

F.3d 975, 985 (2d Cir. 1996))); *Int'l Controls Corp. v. Verco*, 490 F.2d 1334, (2d Cir.

1974) ("The district court may dispense with security where there has been no proof of

likelihood of harm to the party enjoined."), *cert. denied sub nom.,* 417 U.S. 932 (1974).

The Sokolowskis appear to agree that this Court has broad discretion to decide

whether to impose a bond (Obj. at 37 (citing *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d at

985)).  They make only a feint at arguing that the Court should impose a bond of $30

million, the amount that they believe they could obtain if they were to prevail in their

suits against DCG (*id.*).  A bond issued in connection with an injunction is not a

prejudgment attachment or other security for the amount of plaintiffs' claim; it is

intended to protect against "costs and damages" of being "wrongfully enjoined."  Fed. R.

Civ. P. 65(c) (applied here through Fed. R. Bankr. P. 65) (providing that court may

decide to require security in an amount proper to defray "damages sustained by any party

found to have been wrongfully enjoined").  The Sokolowskis offer no counterargument to

the basic point that DCG made in its Opening Brief:  this injunction will not impose any

damages on the Sokolowskis even if they were "improperly enjoined."  In the unlikely

---

[8] In any event, the full record of communications between DCG and the Debtors related to this preliminary injunction motion are already in the record in connection with Genesis's Motion to Enforce. *See* Declaration of Jennifer M. Selendy in Support of Debtors' Reply Brief In Support of Their Motion to Enforce the Plan [ECF No. 2218].

event that the injunction were later vacated, they would simply proceed with their suit at

that time—which is why, as the Second Circuit has repeatedly concluded, no bond is

necessary for injunctions that stay litigation or otherwise protect the court's jurisdiction.

*E.g.*, *Doctor's Assoc. Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) ("Rule 65(c) gives

the district court wide discretion to . . . dispense with the bond requirement . . . where the

injunctive order was issued to aid and preserve the court's jurisdiction over the subject

matter involved."); *Doctor's Assoc's Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)

(same).

### D.  The Doctrine of Laches Does Not Apply Because DCG Acted Promptly

The Sokolowskis argue that the doctrine of laches precludes the injunction DCG

seeks because the Sokolowskis commenced their first action against DCG in January

2025 and DCG sought injunctive relief in June 2025.  Even if DCG had simply waited six

months to seek relief without doing anything, laches would still have no application here.

Laches is designed to prohibit "unreasonable, inexcusable and prejudicial delay."  *Sec.*

*Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 655 B.R. 149, 179 (Bankr. S.D.N.Y.

2023) (quoting *In re Lehman Bros. Inc.*, 617 B.R. 231, 246 (Bankr. S.D.N.Y. 2020), *aff'd*

*sub nom. In re Lehman Bros. Holdings Inc.*, No. 19-3245, 2021 WL 4127075 (2d Cir.

Sept. 10, 2021)).  In this context, the passage of six months between the commencement

of the Sokolowskis' Pennsylvania action and this proceeding does not come close to the

requisite extreme, protracted delay that would make it fundamentally inequitable to

entertain a belatedly asserted cause of action.  *See, e.g.*, *Zuckerman v. Metro. Museum of*

*Art*, 928 F.3d 186, 193 (2d Cir. 2019) (delay of over 70 years warranted application of

laches); *In re Lehman Bros. Inc.*, 617 B.R. 231, 247 (Bankr. S.D.N.Y. 2020), *aff'd sub*

*nom. In re Lehman Bros. Holdings Inc.*, No. 19-3245, 2021 WL 4127075 (2d Cir. Sept.

14

10, 2021) (delay of over a decade warranted application of laches). Nothing, moreover, has occurred in the Sokolowskis' Pennsylvania action in the interim except their as-of-right amendment of their complaint and the parties' briefing on motions to dismiss, which remain pending. No discovery has been taken (or even propounded) and the case is still at the pleading stage. The Sokolowskis do not attempt to explain how they could reasonably be prejudiced by the preliminary litigation of threshold issues that has proceeded to date.

More importantly, DCG did not simply sit on its rights. To the contrary, DCG filed promptly after the Debtors commenced their suits against DCG (and the Sokolowskis filed their second, duplicative Connecticut action), and the overlap in the allegations underlying the claims of the Debtors and the Sokolowskis crystalized the fact that the Sokolowskis are pursuing estate claims. *Cf. Madoff*, 740 F.3d at 91 (reasoning claims were derivative based in part on overlapping factual allegations in the Trustee's complaint and the plaintiffs' complaints). The Debtor Complaints were filed on May 13, 2025 and May 19, 2025; the Sokolowskis filed their Connecticut action on May 29, 2025; and DCG commenced the adversary proceeding less than two months later, in early July—hardly the kind of protracted and "unreasonable or inexcusable" delay required for application of laches.

## III.    The Sokolowskis' Alternative Arguments Offer No Reason to Decline To Issue an Injunction

The Sokolowskis' Objection also contains a grab bag of arguments not evidently related to disposition of the Motion. None of these provide any ground to decline to enjoin the usurpation and misuse of estate causes of action.

- The "First-Filed" Doctrine has no relevance to this case.  The Sokolowskis seem to argue that the Court should permit their Pennsylvania Action to proceed because it was filed first before the Debtors commenced the Delaware Action and the Adversary Proceeding.  (Obj. at 37.)  This can be rejected out of hand.  The "first-filed" doctrine they invoke gives priority to the first-filed of duplicative cases between the same parties on the same issues.  *See New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010).  That doctrine does not teach that individual plaintiffs are free to improperly pursue estate claims as long as they hurry to do so before the estate sues.

- No "heightened standard" applies to the Motion.  The Sokolowskis argue that DCG seeks a "mandatory injunction" subject to a "heightened standard."  (Obj. at 34.)  This, too, is incorrect.  DCG asks that the Court order the Sokolowskis to stop improperly pursuing estate claims, which is a classic prohibitive injunction, *e.g. Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006) (injunction seeking to prohibit enforcement of statute against plaintiff was "clearly" prohibitive), subject to the traditional preliminary injunction standard outlined in the Opening Brief.

- DCG does not seek to extend the automatic stay to a non-debtor.  The Sokolowskis seem to argue that DCG seeks to "extend the automatic stay" to DCG, and that such an attempt is improper because it will not facilitate Genesis's reorganization.  (Obj. at 36.)  This is puzzling, because DCG has never invoked the automatic stay as a ground for the relief sought.  Section 105(a) of the Code may be used both to stay litigation that will frustrate reorganization efforts, and,

16

as relevant here, to enforce the Court's prior orders and protect the Court's

exclusive jurisdiction over estate property.  *See, e.g.*, *In re Adelphia Commc'ns*

*Corp.*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) (section 105(a) may be employed

"to enjoin proceedings in other courts when . . . such a proceeding would defeat or

impair [the court's] jurisdiction with respect to a case before it").

- <u>DCG does not seek a non-consensual third-party release.</u>  The Sokolowskis

  appear to argue that DCG seeks a "post-confirmation release" through this action.

  (Obj. at 14 (citing *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024).)

  That is manifestly incorrect:  DCG has never argued that the Sokolowskis should

  be enjoined because they or anyone else has released claims against DCG.  To the

  contrary, DCG argues that the Debtors are the only party that could prosecute

  such claims—as the Debtors are currently doing in this Court and in Delaware.

## **CONCLUSION**

For the foregoing reasons and the reasons set forth in the Opening Brief, DCG

respectfully requests that this Court enjoin the Sokolowskis from continuing to litigate

their Complaints, by entry of an order in substantially the form set forth in the Proposed

Order attached to the Motion, as amended to account for the voluntary dismissal of

defendant Vincent Falco.

Dated: September 12, 2025
New York, New York

Respectfully submitted,

*/s/ Benjamin S. Kaminetzky*
Benjamin S. Kaminetzky

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Elliot Moskowitz
Daniel J. Schwartz
Marc J. Tobak

*Attorneys for Plaintiff Digital Currency
Group, Inc.*