SELENDY GAY PLLC
Philippe Z. Selendy
Jennifer M. Selendy
Kelley A. Cornish
Claudia R. Tobler
1290 Avenue of the Americas
New York, New York 10104
(212) 390-9000
pselendy@selendygay.com
jselendy@selendygay.com
kcornish@selendygay.com
ctobler@selendygay.com

*Attorneys for Genesis Global Holdco, LLC,*
*Genesis Global Capital, LLC, and Genesis*
*Asia Pacific Pte. Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genesis Global Holdco, LLC, *et al.*,[1] | Case No.: 23-10063 (SHL) |
| Debtors. | Jointly Administered |
| Digital Currency Group, Inc., | |
| Plaintiff, | |
| v. | Adv. Pro. No. 25-01111-SHL |
| Vincent Falco, *et al.*, | |
| Defendants. | |

**DEBTORS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE**
**COUNTERCLAIM OF STEPHEN H. AND CHRISTOPHER H. SOKOLOWSKI**
**PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 12(b)(1)**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number (or equivalent identifier), are: Genesis Global Holdco, LLC (8219); Genesis Global Capital, LLC (8564); and Genesis Asia Pacific Pte. Ltd. (2164R).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ...................................................................................................................6

    A.    The Sokolowskis' Master Loan Agreement and the Sokolowski Proofs of
            Claim for Amounts Owed Under the Master Loan Agreement .............................6

    B.    The Sokolowskis Sue DCG .................................................................................7

    C.    The Adversary Proceeding....................................................................................9

    D.    The Motion to Enforce........................................................................................10

    E.    The Status Conference and Counterclaim...........................................................11

ARGUMENT .....................................................................................................................12

I.     THE COURT SHOULD DISMISS THE SOKOLOWSKIS' COUNTERCLAIM
      UNDER FRBP 12(b)(1) BECAUSE THE SOKOLOWSKIS LACK STANDING
      TO SEEK DECLARATORY RELIEF FOR CLAIMS THEY DO NOT OWN...............12

II.    THE COURT SHOULD ENFORCE THE PLAN AGAINST THE
      SOKOLOWSKIS OR, ALTERNATIVELY, ALLOW THE PENNSYLVANIA
      DISTRICT COURT TO RULE ON DCG'S DISPOSITIVE MOTIONS ........................15

    A.    The Court Should Decline to Issue an Advisory Opinion ....................................16

    B.    The Court Should Not Issue a Section 105 Injunction at This Time ....................17

    C.    The Court Should Enforce the Plan and Confirmation Order Against the
            Sokolowskis ........................................................................................................20

CONCLUSION...................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Federation of Musicians & Employers Pension  Neshoma Orchestra & Singers, Inc.*,
  2018 WL 2338764 (S.D.N.Y. May 23, 2018), *aff'd*, 974 F.3d 117 (2d Cir. 2020) .................. 13

*Arrow Honor Society v. Heckler*,
  464 U.S. 67 (1983) ........................................................................................................... 19

*Cardinal Chemical Co. v. Morton International, Inc.*,
  508 U.S. 83 (1993) ........................................................................................................... 12

*Dunaway v. Purdue Pharmaceuticals L.P.*,
  619 B.R. 38 (S.D.N.Y. 2020) ...................................................................................... 20, 22

*In re Johns-Manville Corp.*,
  666 B.R. 476 (Bankr. S.D.N.Y. 2025) .............................................................................. 23

*In re Kalikow*,
  602 F.3d 82 (2d. Cir. 2010) .............................................................................................. 23

*King Pharmaceuticals, Inc. v. Eon Labs, Inc.*,
  616 F.3d 1267 (Fed. Cir. 2010) ........................................................................................ 16

*Maryland v. Purdue Pharma L.P.*,
  2024 WL 4894349 (S.D.N.Y. Nov. 26, 2024) .............................................................. 20, 22

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ..................................................................................................... 13, 14

*In re Old Carco LLC*,
  530 B.R. 614 (Bankr. S.D.N.Y. 2015) .............................................................................. 17

*PHH Mortgage Corp. v. Sensenich*,
  6 F.4th 503 (2d Cir. 2021) ............................................................................................... 23

*Securities Investor Protection Corp. v. Bernard L. Madoff Inv. Sec., LLC*,
  51 Bankr. Ct. Dec. 71 (Bankr. S.D.N.Y. Feb. 24, 2009) .................................................. 19

*U.S. Lines, Inc. v. GAC Marine Fules Ltd.*,
  68 B.R. 690 (Bankr. S.D.N.Y. 1986) ........................................................................... 19, 23

*Warth v. Seldin*,
  422 U.S. 490 (1975) ......................................................................................................... 19

*In re WorldCorp, Inc.*,
    252 B.R. 890 (Bankr.D.Del.2000) ............................................................................. 23

*Zappia Middle East Construction Co. v. Emirate of Abu Dhabi*,
    215 F.3d 247 (2d Cir. 2000).................................................................................... 13

*Zurich American Insurance Co. v. Wausau Business Insurance Co.*,
    2018 WL 4684112 (S.D.N.Y. Sept. 28, 2018).................................................. 16, 17

## Statutes

11 U.S.C. § 524(g) ....................................................................................................... 23

28 U.S.C. § 2201(a) ................................................................................................... 2, 13

## Rules

FRBP 7012(a) ............................................................................................................. 1, 10

## Other Authorities

Bankruptcy Claims Trading: Basic Concepts, Practical Law Practice Note 5-526-6247............. 15

Genesis Global Capital, LLC, Genesis Asia Pacific Pte. Ltd., and Genesis Global Holdco, LLC (together, "Genesis" or the "Debtors") respectfully submit this opening brief in support of their Motion to Dismiss (the "Motion to Dismiss") the counterclaim for declaratory relief, Adv. ECF No. 12 (the "Counterclaim"),[2] of Stephen H. and Christopher H. Sokolowski (the "Sokolowskis") in the above-captioned adversary proceeding (the "Adversary Proceeding").[3] Relatedly, the Debtors address the Court's questions at the August 15, 2025, status conference (the "Status Conference") regarding (a) what actions are or are not covered by the Plan[4] and (b) whether the Court can combine a hearing on the merits of that issue with the preliminary injunction hearing for purposes of granting a permanent injunction, assuming a record exists to do so (together, the "Injunction Issues").[5]

## PRELIMINARY STATEMENT

The Court should dismiss the Sokolowskis' claim for a declaratory judgment that their Pennsylvania lawsuit (the "Pennsylvania Action") asserts direct claims, rather than estate or derivative claims. In that case, the Sokolowskis request the return of cryptocurrency assets from

---

[2] Although styled as a counterclaim, the Sokolowskis impleaded the Debtors via a third-party claim for a declaratory judgment. This is presumably because the Debtors have argued in the Debtors' Motion to Enforce the Plan Against Digital Currency Group, Inc., ECF No. 2180 (the "Motion to Enforce"), that only the Debtors can be the proper party to seek to enjoin creditor actions if they assert derivative or estate causes of action.

[3] "Adv. ECF" refers to the docket for this Adversary Proceeding, Adv. Pro. No. 25-01111, whereas "ECF" citations are to the docket for the jointly-administered Genesis Chapter 11 Cases, Case No. 23-10063, unless otherwise specified.

[4] Capitalized words used but not defined herein have the meaning ascribed to them in the Motion to Enforce.

[5] See Hr'g Tr., 46:13-25, Aug. 15, 2025 ("What I will ask at the hearing is to say you all are asking me for a legal ruling on this issue as to what's covered by the plan and precluded by the plan and what can be pursued, notwithstanding the confirmation of the plan and that it appears—and I'm guessing that folks will say, Judge, we have a record to do that—so that I would at that point ask you at the hearing that I combine the essentially hearing on the merits of that issue with the preliminary injunction so that we decide it once, that meaning that I have everything I need to decide it, and that I should decide it."). The Sokolowskis served the Debtors with the Counterclaim on August 21, 2025, so the Debtors' response deadline is September 22, 2025, pursuant to Rule 7012(a)(1) of the Federal Rules of Bankruptcy Procedures ("FRBP"). The Debtors reserve all rights to supplement the Motion to Dismiss, including on grounds other than FRBP 12(b)(1).

DCG based on their loans under their Master Loan Agreement with Genesis (the "MLA").  But based on all disclosed information to date, the Sokolowskis do not own *any* rights to sue on, or recover under, their MLA, whether through direct claims or otherwise.  According to their own pleadings, they sold and assigned all "right title, interest, claims and causes of action in and to, or arising under or in connection with," their MLA-based claims to Jefferies Leveraged Credit Products, LLC ("Jefferies," and along with any subsequent assignee, "Buyer") shortly after the Petition Date.  *See* ECF No. 50, Ex. 1.  At the same time, the Sokolowskis want to recover as damages in the Pennsylvania Action the same cryptocurrency that they transferred to Genesis under the MLA.  But the Sokolowskis sold these rights to Buyer and no longer own them.  They cannot establish a necessary adverse legal interest or injury to satisfy the "actual controversy" requirement to invoke the Declaratory Judgment Act.  *See* 28 U.S.C. § 2201(a).  Thus, there is no foundation for this Court to rule on the Sokolowskis' claim—or to issue an injunction under Section 105 of the Bankruptcy Code (a "Section 105 Injunction"), as DCG seeks.  The Sokolowskis' lack of ownership of the rights on which they purport to sue necessarily compels the following conclusions:

- A ruling now on the legal issue of whether the Sokolowskis assert direct or estate claims in their federal Pennsylvania Action would be a purely advisory opinion since they do not own the right to sue under the MLA at all.

- Such a ruling by this Court would still be advisory even if the Pennsylvania consumer protection claims were direct individual claims that are not assignable under Pennsylvania state law (as asserted by the Sokolowskis) because they assigned *all rights* to recoveries to Buyer—thus foreclosing their ability to seek those same damages under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UPTCPL"). Indeed, the Pennsylvania Action seeks the same return of the same cryptocurrencies as the Sokolowskis claim they sold to Buyer.

- There is no scenario in which, as DCG appears to speculate, the Sokolowskis actually could have retained a non-assignable derivative claim that belongs to them, because Pennsylvania state law only addresses non-assignability of *direct* consumer claims. The only scenario in which the Sokolowskis could have retained a non-assignable claim is if the claim is necessarily direct, and therefore would not impact the estates.

2

- If this Court were nonetheless to entertain issuing any injunction, the Sokolowskis are the wrong parties in interest because they do not own any of the rights at the core of the Injunction Issues—and, by contrast, the Buyer that actually holds such rights has *not* asserted any claim, direct or otherwise, against DCG.

To put it differently, neither a declaration nor a preliminary injunction can be issued because neither the Sokolowskis nor DCG can establish all of the following: (1) the Sokolowskis did not assign all their creditor claims to Buyer; (2) the Sokolowskis retained the rights to recover damages with respect to any unassigned claims (if any); and (3) with respect to the null set of unassigned claims on which the Sokolowskis have a right to recover damages, such unassigned claims effectively assert estate causes of action rather than direct individual claims (contrary to the very basis on which the Sokolowskis assert such claims are exempt from assignment). Not one of these propositions has been established, and it is not possible to satisfy all three.

Even if the Sokolowskis were somehow able to establish—despite their assignment away of all rights to and interests in any claims in connection with the MLA—that they could still assert claims in connection with the MLA in Pennsylvania, the only possible basis for the preservation of such claims would be that the claims were direct and asserted by the Sokolowskis in their individual capacity. But if that is true, then there is no possible ground for injunctive relief. Even if DCG were a proper party to seek such relief (and it is not, as set forth in the Debtors' Motion to Enforce), the Court still should not issue a Section 105 Injunction because the Adversary Proceeding does not seek to enjoin direct claims. Nor are direct claims any concern either to the estates or to this Court, for obvious reasons: no estate claims are implicated. Notably, DCG moved to dismiss the Sokolowskis' claims in the Pennsylvania Action months ago on multiple grounds, including that (a) the Sokolowskis do not own those claims, and (b) the Sokolowskis assert estate causes of action. The Pennsylvania District Court is well equipped to adjudicate these issues and may dismiss the complaint for any number of reasons. In addition, the duplicative Connecticut

3

Action is stayed, pending the outcome of the Pennsylvania Action.  All of this could and should have happened at no cost to the Debtors or their estates beyond monitoring the progress of the Pennsylvania and Connecticut Actions.  But because of DCG's belated and self-interested actions, the Debtors have incurred the significant cost and expense of litigating the unnecessary Adversary Proceeding, the Counterclaim, and the Injunction Issues, not to mention wasting the time and resources of this busy Court.

Further, the circumstances here are nothing like those in *Purdue* or other mass tort cases. Since Plan confirmation more than sixteen months ago, the *pro se* Sokolowskis are the only third-party claimants who have asserted statutory claims against DCG—likely because they have no other theory of recovery after having assigned away their creditor claims.[6]  No evidence exists that scores of individual creditor lawsuits have been or will be filed, or that any such suits could destabilize the Debtors' *post-confirmation* bankruptcy cases.  Only the *pro se* Pennsylvania Action is pending.  DCG has already fully briefed its motion to dismiss in the Pennsylvania Action.  The most cost-effective and efficient path forward for the estates is to allow this litigation between non-debtor third parties to proceed to decision in the Pennsylvania District Court on DCG's dispositive motions.  No urgency exists.

The Debtors are actively pursuing litigation against DCG to maximize creditor recoveries. Since Plan confirmation, the Debtors—at the direction of the Litigation Oversight Committee—commenced actions in the Delaware Chancery Court and this Court seeking to recover "in-kind" value in amounts exceeding $2 billion from DCG and related individuals.  Unlike the Sacklers in *Purdue*, DCG is not offering to contribute billions towards creditor recoveries to centralize

---

[6] Only one other third party, Vincent Falco, asserted a claim against DCG, but he has voluntarily withdrawn his case following discussions with the Debtors.

4

25-01111-shl    Doc 30    Filed 09/22/25    Entered 09/22/25 15:44:58    Main Document
Pg 9 of 26

resolution of the claims against them in bankruptcy court. The opposite is true. On August 14, 2025, the day before the Status Conference, DCG filed an adversary proceeding to nullify the $1.1 billion promissory note it issued to the Debtors and to claw back nearly $106 million it paid to the estates under it, from which creditor distributions have already been made.[7] For years, DCG has repeatedly denied any wrongdoing here, and seeks to avoid accountability at every turn. An injunction would be even less supportable than an advisory opinion in response to the Sokolowskis' claim for a declaratory judgment—and it would serve no interest of the estates or this Court, merely insulating DCG.

To be clear, only the Debtors can bring estate causes of action. If former Genesis customers or other litigants try to usurp these rights, the Debtors will ask this Court to stop them from doing so in the most cost efficient and practical way possible. The Debtors can ask for this relief without the need for a stand-alone Section 105 Injunction, unlike DCG, which has no rights of its own under the Plan to enforce here. If the Court were inclined to consider the Sokolowskis' declaratory judgment claim, despite the lack of any "actual controversy" under the Declaratory Judgment Act, and if the Court were to conclude that the Sokolowskis were somehow able to assert retained causes of action belonging to the estate in their individual state law claims (despite their assignment of all right, title, and interest to all such claims), then the Debtors respectfully would ask the Court to (1) find the Sokolowskis in violation of its Confirmation Order and in violation of the Plan, (2) direct them to promptly dismiss their Pennsylvania and Connecticut Actions, and (3) and dismiss the Adversary Proceeding. But because no circumstances warrant any consideration of

---

[7] *See* Complaint ¶ 61, *Digit. Currency Grp., Inc.* v. *Genesis Glob. Cap., LLC*, No. 25-01129 (Bankr. S.D.N.Y. 2023) ("DGG is entitled to a declaration from this Court that the Principal Amount of the Promissory Note is $0, and DCG has no further obligations under the Note."), ¶ 89 ("Accordingly, DCG is entitled to judgment against GGC ordering GGC to restore $105,938,161.07, plus interest, to DCG."), and ¶¶ 98, 107 ("Accordingly, DCG is entitled to judgment against GGC ordering GGC to repay $105,938,161.07, plus interest, to DCG.")

5

the Sokolowskis' claim for declaratory judgment, the Counterclaim and the Adversary Proceeding

should be dismissed.

## **BACKGROUND**

The Debtors incorporate the background section in their Motion to Enforce herein, and

supplement such background with the following additional relevant facts.

A.    **The Sokolowskis' Master Loan Agreement and the Sokolowski Proofs of Claim for Amounts Owed Under the Master Loan Agreement**

On May 14, 2021, Cryptocurrency Management, LLC ("CM LLC"), a limited liability

company owned and operated by the Sokolowskis through which they held their cryptocurrency

assets,[8] entered into the MLA with Genesis Global Capital, LLC, for the purpose of loaning cryp-

tocurrency to Genesis.  Mem. of Law in Supp. of Mot. to Dismiss of Defs. Ex. 1, *Sokolowski v.*

*Digit. Currency Grp., Inc.*, No. 25-cv-1 (M.D. Pa. 2025), ECF No. 37.  Under the MLA, and over

the course of their lending relationship, the Sokolowskis allegedly "entrusted over ninety percent

(90%) of their total net worth to Genesis," in the form of cryptocurrency.  *See* Tobak Decl., Adv.

ECF No. 3, Ex. C ¶ 30 (the "Amended Pennsylvania Complaint").  The Sokolowskis assert that

DCG "owned and controlled Genesis and oversaw the financial strategies and disclosures that

misled [them]."  *Id.* ¶ 7.

On January 11, 2023, Genesis filed for chapter 11 in this Court.  *See, e.g.*, ECF No. 1.  On

January 31, 2023, the Sokolowskis, through CM LLC, transferred 100% of their interest in their

claims arising under or in connection with the MLA to Jefferies.  *See* ECF No. 50, Ex. 1.  The

Rule 3001 Notice stated, among other things, that:

---

[8] The Sokolowskis aver that CM LLC is a nominal entity that they created solely for the purposes of making loans to Genesis. Tobak Decl. ¶¶ 8, 30-39, Adv. ECF No. 3, Ex. C.  They refer to themselves as owners of the claims and interests that they sold, *id.* ¶ 96, as well as holders of the UTPCPL claims.  *Id.* ¶ 96.  For ease of reference, the Debtors refer to the Sokolowskis and their entity, CM LLC, interchangeably in this brief.

> For value received, the adequacy and sufficiency of which are
> hereby acknowledged, Cryptocurrency Management LLC, with of-
> fices located at 3178 Carnegie Drive, State College, PA 16803 USA
> (the "Seller"), hereby unconditionally and irrevocably sells, trans-
> fers and assigns to Jefferies Leveraged Credit Products, LLC, with
> offices located at 520 Madison Avenue, 3rd Floor, New York, New
> York 10022 (the "Buyer") a value of $4,000,000.00 of ***Seller's
> right, title, interest, claims and causes of action in and to, or aris-
> ing under or in connection with, Seller's claim*** (as such term is
> defined in Section 101(5) of the U.S. Bankruptcy Code), designated
> on the Claims Registry in the Bankruptcy Case (as defined below)
> as Case No. 23-10063 and filed in the original liquidated face claim
> amount of $4,000,000.00, that was asserted against Genesis Global
> Capital, LLC and Genesis Global Holdco, LLC, and each of its debt-
> ors and non-debtor affiliates (collectively, "Genesis"), (the "Bank-
> ruptcy Case") pending in the United States Bankruptcy Court for the
> Southern District of New York (the "Bankruptcy Court").

*Id.* (emphasis added) (the Sokolowskis' assigned claim, the "Assigned Claim" and the Assigned

Claim along with all related rights including under the MLA, the "MLA Rights").



## B.   The Sokolowskis Sue DCG

On January 2, 2025, almost two years after selling all their rights to sue under the MLA to

Buyer, the Sokolowskis filed the Pennsylvania Action—a *pro se* case in the Middle District of

Pennsylvania—against DCG and other defendants. Complaint, *Sokolowski*, No. 25-cv-1 (M.D. Pa.

2025), ECF No. 1 ("the Pennsylvania Complaint"); *see also* Amended Pennsylvania Complaint.

---

[9] The Sokolowskis ███████████████████████████████████
███████████████████████████████

The Pennsylvania Action asserts only one claim, under Pennsylvania state law, for "fraudulent misrepresentations and omissions directed at [the Sokolowskis] personally," in violation of the UTPCPL made in connection with the Sokolowskis' loans to Genesis under the MLA.  Amended Pennsylvania Complaint ¶ 22.  As damages, it requests return of the same cryptocurrency that the Sokolowskis loaned to Genesis under the MLA, subject to an offset for the proceeds from the sale of their claim to Jefferies, or the dollarized value of those coins. *Id.* ¶¶ 159-60.

On April 22, 2025, DCG and Silbert filed a Motion to Dismiss (the "Pennsylvania Motion to Dismiss") the Pennsylvania Action, arguing among other things that the Sokolowskis had sold all of their claims and causes of action at issue to Buyer.  Mem. of Law in Supp. of Mot. to Dismiss of Defs. at 18, *Sokolowski*, No. 25-cv-1 (M.D. Pa. 2025), ECF No. 37 ("[The Sokolowskis] assigned and sold not only [their] claims under the MLA against Genesis, but also any 'claims or causes of action in and to, or arising under or in connection with,' that claim, whether asserted against Genesis or its 'non-debtor affiliates'").  On May 27, 2025, the Sokolowskis filed their opposition to the Pennsylvania Motion to Dismiss, in which they argued that assignment of CM LLC's claims and interests did not extinguish their UTCPL claims.  Pls. Mem. of Law in Opp. to Defs.' Mot. to Dismiss at 53-55, *id.* ECF No. 44.  Finally, on July 1, 2025, DCG filed its Reply Brief in Support of the Pennsylvania Motion to Dismiss, through which it also argued that the Sokolowskis' claims belong to the Debtors' estates.  Reply Mem. of Law in Supp. of Mot. to Dismiss of Defs. at 24 n.12, *id.* ECF No. 52.  The Pennsylvania Motion to Dismiss is fully briefed and ripe for decision in the Middle District of Pennsylvania.  *See generally Sokolowski*, 25-cv-1 (M.D. Pa. 2025).

On May 30, 2025, the Sokolowskis filed the Connecticut Action, a second *pro se* action, suing the same defendants and alleging the same facts asserted in the Pennsylvania Action, in the

District of Connecticut. *See Sokolowski v. Digit. Currency Grp., Inc.*, 25-cv-870 (D. Conn. May 30, 2025), ECF No. 1; *see also* Tobak Decl., Adv. ECF No. 3, Ex. D (the "Connecticut Complaint"). They assert one claim under the Connecticut Unfair Trade Practices Act and common law claims for fraud, negligent misrepresentation, conspiracy, aiding and abetting fraud, and unjust enrichment, arising out of the same facts. Connecticut Complaint ¶¶ 192-215. On August 28, 2025, DCG moved to stay the Connecticut Action, on the basis that the Sokolowskis admitted that the action was "substantially identical" to their Pennsylvania Action (the "Connecticut Stay Motion"). Defs.' Resp. to Pls.' Mot. to Stay Proceedings, *Sokolowski* (D. Conn. 2025), ECF No. 43. On September 4, 2025, the Sokolowskis filed a reply in support of the Connecticut Stay Motion, agreeing to stay the case pending the outcome of the Pennsylvania Action. *Id.* ECF No. 45. On September 11, 2025, the Sokolowskis and DCG filed a joint report, agreeing that the Connecticut Action should be "stayed or dismissed without prejudice." *Id.* ECF No. 48. On September 12, 2025, the Connecticut District Court granted the motion to stay the Connecticut Action pending resolution of the Pennsylvania Action. *Id.* ECF No. 49.

### C.    The Adversary Proceeding

On July 8, 2025, DCG filed the Adversary Proceeding and the Injunction Motion seeking to enjoin the Pennsylvania and Connecticut Actions on the basis that the Sokolowskis improperly assert estate claims in those cases. Adv. ECF Nos. 1, 2.

On August 14, 2025, the Sokolowskis filed Defendants' Answer, Affirmative Defenses, Counterclaim, and Request for Case Management Order (the "Answer and Counterclaim"). Adv. ECF No. 12. In the Answer and Counterclaim, the Sokolowskis joined the Debtors and DCG in that Counterclaim, compelling the Debtors to respond to the Adversary Proceeding. *Id.* ¶¶ 38, 42.

In their Counterclaim, the Sokolowskis argue that their claims under the UTPCPL are not assignable because it is a statutory claim that is purely personal in nature. *Id.* ¶¶ 29, 32. The

9

Sokolowskis maintain that under longstanding Pennsylvania law, in cases where a statute creates a right of action solely in favor of the party injured, it cannot be assigned as a matter of law.  *See* Adv. ECF No. 20 at 15.  Apparently, the Sokolowskis believe that they can recover and pocket the very same cryptocurrency that their assignee, Buyer, now has a right to recover under the assignment agreement simply because they identified a potentially non-assignable cause of action.

The Sokolowskis served their Counterclaim on the Debtors on August 21, 2025.  The Debtors' time by which to answer or respond is September 22, 2025, under Bankruptcy Rule 7012(a)(1).  FRBP 7012(a)(1).

On September 7, 2025, the Sokolowskis filed their opposition to the Injunction Motion, arguing again that their UTPCPL claims are direct because they are non-assignable, and that the Court should not decide the Injunction Motion on the merits.  *See* Adv. ECF No. 20.  On September 12, 2025, DCG filed its reply memorandum in support of the Injunction Motion, reiterating the arguments in favor of deciding the Injunction Motion on the merits.  *See* Adv. ECF No. 25.

Prior to the filing of this Motion to Dismiss, the Debtors had not filed any pleadings in the Adversary Proceeding, were not a party to the Adversary Proceeding, and had not expressed a position on whether the Sokolowskis assert direct or estate causes of action.

### D.     The Motion to Enforce

Before the Sokolowskis joined the Debtors to the Adversary Proceeding, the Debtors, on July 14, 2025, filed the Motion to Enforce on the grounds that DCG, by filing the Adversary Proceeding, improperly usurped the Debtors' rights to assert and control all estate causes of action, including any actions undermining their litigation strategies.  On August 8, 2025, DCG filed its Objection to Debtors' Motion to Enforce the Plan.  ECF No. 2213.  On August 12, 2025, the Sokolowskis filed their Limited Response and Statement of Neutral Position Regarding Debtors' Motion to Enforce, With Request for Targeted Procedural Relief and Reservation of Rights.  ECF

No. 2215.  On August 13, 2025, the Debtors filed their Reply Brief in Support of Their Motion to Enforce the Plan Against Digital Currency Group, Inc., ECF No. 2217.  The Motion to Enforce is fully briefed.

E.    **The Status Conference and Counterclaim**

On August 15, 2025, the Court held the Status Conference on the Adversary Proceeding, the Injunction Motion, and the Motion to Enforce.  Toward the end of the conference, the Sokolowskis told the Court that they had filed their Answer and Counterclaim the day before, on August 14, 2025, but it was not yet uploaded to the electronic docket.  Hrg. Tr. at 43:6-9; *see* Adv. ECF No. 12.  The Sokolowskis also advised the Court that they were asking for a declaratory judgment on whether their UTPCPL claim is a direct, not derivative, claim as pleaded.  *Id.*

At the Status Conference, the Court invited parties to brief the issues responsive to the Counterclaim.  Hrg. Tr. at 44:8-12 ("And so you all are working on a briefing schedule.  People are going to file what they're going to file and explain it to me and lay out in more detail your views today and then we'll talk about in September and see where we are.").

The Court also directed the parties to be prepared to argue the Injunction Issues.  Hrg. Tr. at 46:15-25 ("What I will ask at the hearing is to say you all are asking me for a legal ruling on this issue as to what's covered by the plan and precluded by the plan and what can be pursued, notwithstanding the confirmation of the plan and that it appears—and I'm guessing that folks will say, Judge, we have a record to do that—so that I would at that point ask you at the hearing that I combine the essentially hearing on the merits of that issue with the preliminary injunction so that we decide it once, that meaning that I have everything I need to decide it, and that I should decide it.")

## **ARGUMENT**

I.   **THE COURT SHOULD DISMISS THE SOKOLOWSKIS' COUNTERCLAIM UNDER FRBP 12(b)(1) BECAUSE THE SOKOLOWSKIS LACK STANDING TO SEEK DECLARATORY RELIEF FOR CLAIMS THEY DO NOT OWN**

The Sokolowskis lack standing to seek relief under the Declaratory Judgment Act. 28 U.S.C. § 2201(a) (the "Act"). Without ownership of the rights at issue, the Sokolowskis fail to meet their burden of establishing a necessary adverse legal interest or injury to satisfy the "actual controversy" required to invoke the Act. *Cardinal Chem. Co. v. Morton Int'l., Inc.*, 508 U.S. 83, 95 (1993) ("a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy."). For this reason, the Court should dismiss the Counterclaim out-right.

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court "may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). "Thus, the standard used to evaluate a Rule 12(b)(1) motion is similar to that used for summary judgment under Fed. R. Civ. P. 56." *Am. Fed'n. of Musicians & Emps.' Pension Fund v. Neshoma Orchestra & Singers, Inc.*, 2018 WL 2338764, at *2 (S.D.N.Y. May 23, 2018) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)), *aff'd*, 974 F.3d 117 (2d Cir. 2020).

The Court only has jurisdiction under the Act to enter a declaratory judgment if an "actual controversy" exists. 28 US.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). For an actual controversy to exist, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests; and ... real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (internal quotations and

12

alterations omitted).  The facts must show "a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

The Sokolowskis cannot establish the necessary adverse legal interest or injury to satisfy the case or controversy requirement because they do not own the claims or rights at issue.  Almost two years before filing the Pennsylvania and Connecticut Actions, the Sokolowskis sold the Assigned Claim to Buyer.  *See* Ex. 1.  This assignment included not only the Assigned Claim the Sokolowskis identified in their proof of claim, but *all* other related rights, including the MLA Rights.  *Id.*  The Rule 3001 Notice confirms this, clearly stating that the Sokolowskis transferred all "right, title, interest, claims and causes of action in and to, *or arising under or in connection with*" their Assigned Claim.  *Id.* (emphasis added).

The Debtors asked both Buyer and the Sokolowskis to voluntarily provide a copy of the Assignment Agreement before filing the Motion to Dismiss.  Both refused, and the Debtors have open subpoenas and ongoing requests for the document.  As a practical matter, bankruptcy claims trading agreements typically include as standard terms (a) the assignment and sale of the claim and related documents, including the proof of claim, (b) all associated rights including the right to receive future distributions on account of the claims, no matter what the source, and (c) the right to bring causes of action arising out of or in connection with the assigned claim.  *See, e.g.*, Bankruptcy Claims Trading: Basic Concepts, Practical Law Practice Note 5-526-6247.  The Assignment Agreement is likely comparable, and may even include additional protections in favor of Buyer, such as a full participation right in any non-assignable claims and their recoveries, along with an indemnity in favor of Buyer for litigation in connection with the scope of the assigned rights under the agreement.

13

The Pennsylvania Action asserts a claim arising from the Sokolowskis' investments under the MLA and indeed seeks relief *duplicative* of the Assigned Claim.  The Sokolowskis demand, among other things:

- An order directing Defendants to deliver to Plaintiffs the identical number and type(s) of cryptocurrency coins that Plaintiffs originally entrusted to Genesis, subject to an appropriate offset for the partial claim sale proceeds Plaintiffs have received, so as to avoid any double recovery.  Amended Pennsylvania Complaint ¶ 159.

- In the event Defendants cannot return the same cryptocurrency coins, an award to Plaintiffs of the full and fair market value of those coins, measured at the time of payment or at final judgment … similarly offset by any prior partial recovery, together with prejudgment interest on all sums awarded for Plaintiffs' loaned US Dollar losses from the date of the wrongful conduct to the date of entry of judgment, and postjudgment interest thereafter, at the highest lawful rate.  Amended Pennsylvania Complaint ¶ 160.

- Treble damages and attorneys' fees.  Amended Pennsylvania Complaint. ¶¶ 161-62.

These fall squarely within the scope of the transferred rights described in the Rule 3001 Notice, and logically are part of "all the claims" that the Sokolowskis—and DCG—concede were sold.  *See* Ex. 1; Injunction Motion, Adv. ECF No. 4 at 4-5 (DCG asserts "[t]he Sokolowskis, through CM, were general unsecured creditors of the Debtors and resolved their claims against the Debtors in a transfer to Jefferies"); Ex. 4 (email from Ben Kaminetzky, counsel for DCG (Aug. 27, 2025), explaining that the Sokolowskis' "fund assigned all 'right, title, interest, claims and causes of action in and to, or arising under in connection with, Seller's claim'"); Amended Pennsylvania Complaint ¶ 131 (the Sokolowskis concede that "CM LLC sold its bankruptcy claim against Genesis to Jefferies").  Accordingly, the Sokolowskis do not own the claims asserted in the Counterclaim, and this Court lacks jurisdiction to issue a declaratory judgment.  *See King Pharms., Inc. v. Eon Labs, Inc.,* 616 F.3d 1267, 1282-83 (Fed. Cir. 2010) (stating that where a party retains no rights to sue and covenants not to sue, there exists no case or controversy).

14

*Zurich American Insurance Co. v. Wausau Business Insurance Co.*, 2018 WL 4684112 (S.D.N.Y. Sept. 28, 2018) proves instructive.  In that case, the plaintiff sought a declaratory judgment that the defendant was obligated to defend and indemnify a third party in a personal injury action.  *Id.* at *1.  The defendant moved to dismiss, arguing that the plaintiff had already assigned away its right to sue the defendant and was not a true party-in-interest with standing to sue.  *Id.* at *5.  The Court agreed and dismissed the claim, stating that the plaintiff's "assignment of its right to recover sums from anyone liable for injury or damages vitiated its right to seek a declaratory judgment against [defendant]."  *Id.* at *6.  Courts in this jurisdiction have similarly found that there is no subject matter jurisdiction where the dispute between the Debtors and the movant is "neither immediate nor real."  *In re Old Carco LLC*, 530 B.R. 614, 619-20 (Bankr. S.D.N.Y. 2015) (finding that the Court lacked subject matter jurisdiction to issue a declaratory judgment where the movant failed to show an actual controversy because the debtor had gone out of business and had no prospect of further litigation with the movant).

The same is true here.  The Sokolowskis assigned away all their MLA Rights.  Thus, they have no claims in connection with the MLA remaining.  As a result, the Sokolowskis do not have a legal right to bring the Pennsylvania and Connecticut Actions, and no "actual controversy" within the Act can exist between them and the Debtors or DCG.[10]  The Counterclaim must be dismissed.

## II.    THE COURT SHOULD ENFORCE THE PLAN AGAINST THE SOKOLOWSKIS OR, ALTERNATIVELY, ALLOW THE PENNSYLVANIA DISTRICT COURT TO RULE ON DCG'S DISPOSITIVE MOTIONS

At the Status Conference, the Court asked the parties to address two issues: (a) what actions are or are not covered by the Plan; and (b) whether the Court can combine a hearing on the merits

---

[10] On information and belief, the Sokolowskis also sold all rights to recover damages from the same set of facts that form the basis of their right to recover on the MLA.  For this reason, they also fail to establish redressability as is required for Article III Constitutional standing.

15

of that issue with the preliminary injunction hearing for purposes of granting a permanent injunc-

tion, assuming a record exists to do so.  *See* Hrg Tr. 46:13-25, Aug. 15, 2025.  As discussed herein,

the Sokolowskis' assignment of the claims at issue is a gating question that the Court should ad-

dress first.  Because the Sokolowskis do not own the claims, any ruling on what actions are or are

not covered by the Plan amounts to an impermissible advisory opinion.  For the same reason, no

basis for an injunction—preliminary or otherwise—exists.  Regardless, if the Court is inclined to

rule on whether the Pennsylvania Action asserts individual or estate claims, it should find that the

Plan already enjoins the Sokolowskis' prosecution of estate claims and enforce the Plan and Con-

firmation Order against them.  No need for an injunction proceeding exists because the Court has

inherent power to enforce and compel compliance with its existing orders that already enjoin such

conduct. *See, e.g.*, *U.S. Lines, Inc.* v. *GAC Marine Fules Ltd.*, 68 B.R. 690, 695 (Bankr. S.D.N.Y.

1986) ("The duty of any court to hear and resolve legal disputes carries with it the power to enforce

the order.")

### A.    The Court Should Decline to Issue an Advisory Opinion

The Sokolowskis sold *all* their rights to sue for any recovery from the MLA, including the

MLA Rights.  The Sokolowskis cannot have it both ways: they cannot concede assigning all their

rights under the MLA—which include rights to in-kind distribution under the Plan for cryptocur-

rency loaned under the MLA—and at the same time sue to obtain recovery of the exact same

cryptocurrency under the UPTCPL.  Finally, no scenario exists in which the Sokolowskis could

retain a non-assignable estate claim that belongs to them, as such a claim would already belong

exclusively to the Debtors under the Plan.

It follows that any decision on what types of claims the Pennsylvania Action asserts, and

whether to issue a preliminary injunction, amounts to an impermissible advisory opinion.  Federal

courts, including bankruptcy courts, are barred from giving opinions advising what the law would

be upon a hypothetical set of facts. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Inner Arrow Honor Society v. Heckler*, 464 U.S. 67, 72-73 (1983). Here, as the Sokolowskis are asserting claims over which they have no ownership rights, a ruling on the legal issue of whether the claims they assert in the Pennsylvania or Connecticut Actions are direct or ones that belong to the estates would be advisory. *See Warth*, 422 U.S. at 499*; Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 51 Bankr. Ct. Dec. 71, at *2 (Bankr. S.D.N.Y. Feb. 24, 2009) (stating that a declaratory judgment sought by a movant who did not have claims against the Debtor would "constitute an impermissible advisory opinion.").

The Court should allow the Pennsylvania Court to adjudicate the Pennsylvania Action— an action between non-debtor third parties—where these issues and other issues are already fully briefed.

**B.    The Court Should Not Issue a Section 105 Injunction at This Time**

The Court should decline to issue a Section 105 Injunction at this time, given the Sokolowskis do not own the rights on which they sue. For the same reasons, DCG also fails to satisfy the standards for injunctive relief.[11]

Along with the likelihood of success on the merits, courts generally evaluate the Federal Rules of Civil Procedure 65 factors when considering requests for a preliminary injunction in bankruptcy: (1) would the "reorganization process" suffer imminent irreparable harm in the absence of an injunction; (2) does the balance of harms weigh in favor of the moving party; and (3) is the injunction in the public interest. *See Maryland v. Purdue Pharma L.P.*, 2024 WL 4894349 at *7 (S.D.N.Y. Nov. 26, 2024) (applying modified four-factor test and affirming this Court's

---

[11] In any case, the Plan expressly vests the Debtors with the exclusive right to pursue their retained causes of action, barring DCG from seeking a Section 105 Injunction. *See infra* Section C.

preliminary injunction against litigation that threatened the debtors' most valuable assets); *Duna-way v. Purdue Pharms. L.P.*, 619 B.R. 38, 58 (S.D.N.Y. 2020) (applying the four-part test).

There is no reasonable likelihood of success on the merits of a preliminary injunction—even if the state law consumer protection cause of action that the Sokolowskis purport to assert is not assignable as a matter of law—because the Sokolowskis have assigned away all claims and interests under the MLA. They therefore have no remaining monetary interest in any claims.

DCG also cannot establish the requisite imminent irreparable harm to the estates needed to support its Injunction Motion. If DCG is correct that the Sokolowskis assert estate claims, then the Plan and Confirmation Order already enjoin their litigation and the Debtors respectfully ask the Court to enforce the existing chapter 11 injunctions against the Sokolowskis and direct them to dismiss the Pennsylvania and Connecticut Actions.

Moreover, the Pennsylvania and Connecticut Actions do not evidence any imminent flood of similarly situated Genesis customers waiting to sue on similar facts—far from it. The Sokolowskis are in the unique position of having sold their MLA Claims. They are no longer entitled to Plan distributions on account of the Assigned Claim and are nonetheless seeking to recover the same funds and cryptocurrencies from DCG. In contrast, the Debtors are actively pursuing estate causes of action to maximize recoveries for the benefit of all creditors who can recover from Genesis. There is no reason to anticipate that other Genesis customers will attempt this improper legal maneuver.

Alternatively, if the Pennsylvania Court somehow finds that the Sokolowskis may bring a non-assignable claim under the UTPCPL, and that they can recover outside of the rights they already assigned to Buyer, any such recovery from DCG would be on account of claims that are not estate claims. But DCG does not have an indemnity right against the estates, is not funding the

estates, is not a fixed source of recovery for the estates like an insurance company would be, and does not benefit from releases under the Plan.[12]  To the extent that DCG may be found liable to the Sokolowskis for damages that DCG thinks were already paid to the Buyer, that is an issue concerning the scope and enforcement of the assignment agreement that is strictly between and among non-debtor, third parties: DCG, the Sokolowskis, and Buyer.

As noted previously, this is not *Purdue*, where this Court granted an injunction because third-party litigation "threatened the debtors' most valuable assets." *See* Injunction Motion at 15; *Maryland*, 2024 WL 4894349 at *7; *Dunaway*, 619 B.R. at 58.  In *Dunaway*, this Court acknowledged a "deluge" of litigation "threatened the Debtors' ability to comply with the terms of" the settlement structure and upheld the bankruptcy court's determination that an injunction would "preserve any reasonable prospect of success for a *future reorganization plan*." *Dunaway*, 619 B.R. at 45, 58-59 (internal quotation omitted) (emphasis added).  No such threat exists here.  Genesis is not a mass tort case and the customer claims against it are based on prepetition lending agreements with Genesis which are being resolved through the traditional claims process in the chapter 11 cases.  In fact, any such claims against Genesis were established based on events that arose in 2022 or earlier—and the statutes of limitation for many of them have already run.  In the event of future copycat litigation—an exceedingly unlikely event given the many infirmities with the Sokolowskis' claims in the Pennsylvania Action—the Debtors will assess their legal options at that time, including whether requesting an injunction would be appropriate.

Finally, the balance of the harms and the public interest do not weigh in favor of DCG. DCG has no rights under the Plan or otherwise to an injunction to protect itself from third party

---

[12] *See* Plan Art.I.A.202 (definition of "Released Parties" excludes DCG Parties as defined in Plan).

claims.  In short, the Court should not grant a Section 105 Injunction on such an extremely tenuous (if not entirely absent) legal foundation and jurisdictional basis.

### C.    The Court Should Enforce the Plan and Confirmation Order Against the Sokolowskis

Setting aside these dispositive ownership issues and the lack of a basis for a preliminary injunction, if the Court disagrees and is inclined to reach the merits of the Sokolowskis' Counter-claim and conclude that the Sokolowskis assert estate causes of action, the Plan already enjoins them from doing so.  Plan, Art. VIII.G.  The Plan vests the Debtors with the exclusive right to pursue any "Retained Causes of Action"—including all claims that arise from tort, breach of fidu-ciary duty, or violation of state or federal law, and "all such Causes of Action or other claims" against DCG and its officers and directors.  *See id.* Art IV.B.14, Art. I.A.35, Art. I.A.208.  The Plan also provides that "all Entities who have held, hold, or may hold Claims against or Interests in the Debtors … are enjoined from … enforcing, attaching, collecting, or recovering by any man-ner or means any judgment, award, decree, or order against such Entities on account of or in con-nection with respect to any such Claims or Interests" against the Debtors—which includes by prosecuting the Retained Causes of Action on their own behalf.  *Id.* Art. VIII.G.  The Confirmation Order states that the Plan's injunction provision "shall remain in full force and effect" following confirmation, such that the Sokolowskis' pursuit of an estate cause of action violates the Court's order.  *See* Confirmation Order ¶ 151.

In this case, the Debtors would ask the Court to simply enforce the Plan and Confirmation Order against them, without the need for a Section 105 Injunction.  *See, e.g.*, *In re Kalikow*, 602 F.3d 82, 93 (2d. Cir. 2010) (holding that enforcing an existing injunction does not require an ad-versary proceeding); *In re WorldCorp, Inc.*, 252 B.R. 890, 895 (Bankr.D.Del.2000) ("[A]n adver-sary proceeding is not necessary where the relief sought is the enforcement of an order previously

obtained."); *see also* 11 U.S.C. § 524(g)(1)(A) (providing that a court may issue an injunction in connection with an order confirming a plan of reorganization).

The Court has ample authority and jurisdiction to enforce its own orders, including its existing injunctions in the Plan. *See U.S. Lines*, 68 B.R. at 695 (court has inherent power to enforce compliance with its orders by issuance of a contempt citation if needed); Confirmation Order ¶ 172 (retention of jurisdiction); Plan Art. XI (same); *see also PHH Mortg. Corp. v. Sensenich*, 6 F.4th 503, 512 (2d Cir. 2021) (citing *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019) ("A bankruptcy court's contempt power derives from a court injunction and 11 U.S.C. § 105(a).")); *In re Johns-Manville Corp.*, 666 B.R. 476, 484 (Bankr. S.D.N.Y. 2025) (Section 105 of the Bankruptcy Court provides "statutory power [that] follows the tradition of federal courts imposing civil contempt sanctions to correct non-compliance with their injunctions").

## CONCLUSION

For the reasons set forth above, the Court should (A) dismiss the Counterclaim and the Adversary Proceeding; or (B) if the Court reaches the merits, either (i) enforce the Plan and Confirmation Order against the Sokolowskis and direct the Sokolowskis to dismiss their claims, if the Court concludes that the Sokolowskis assert estate causes of action; or (ii) let the Pennsylvania District Court adjudicate DCG's pending motion to dismiss, if the Court concludes that the Sokolowskis do not assert estate causes of action; and (C) grant such other relief as is just and equitable.

Dated: September 22, 2025
      New York, New York

Respectfully submitted,

SELENDY GAY PLLC

By:    /s/    *Jennifer M. Selendy*
      SELENDY GAY PLLC
      Philippe Z. Selendy
      Jennifer M. Selendy
      Kelley A. Cornish
      Claudia R. Tobler
      1290 Avenue of the Americas
      New York, New York 10104
      (212) 390-9000
      pselendy@selendygay.com
      jselendy@selendygay.com
      kcornish@selendygay.com
      ctobler@selendygay.com

      *Attorneys for Genesis Global Holdco, LLC,*
      *Genesis Global Capital, LLC, and Genesis Asia*
      *Pacific Pte. Ltd.*