Hearing Date:  To Be Announced

STEPHEN H. SOKOLOWSKI
3178 Carnegie Dr
State College, PA 16803
Telephone: 814-600-9800
Email: steve@shoemakervillage.org
*Pro Se Defendant*

CHRISTOPHER H. SOKOLOWSKI
3178 Carnegie Dr
State College, PA 16803
Telephone: 814-600-9804
Email: chris@shoemakervillage.org
*Pro Se Defendant*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>Genesis Global Holdco, LLC, et al.,<br><br>Debtors[1] | Case No. 23-10063 (SHL) |
| DIGITAL CURRENCY GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN H. SOKOLOWSKI,<br>CHRISTOPHER H. SOKOLOWSKI,<br>GENESIS GLOBAL HOLDCO, LLC,<br>GENESIS GLOBAL CAPITAL, LLC, AND<br>GENESIS ASIA PACIFIC PTE. LTD.<br><br>Defendants. | Adversary Proceeding No.<br>25-01111 (SHL) |

**COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEBTORS' MOTION TO DISMISS THE COUNTERCLAIM**

---

[1] The Wind-Down Debtors in these cases, along with the last four digits of each Wind-Down Debtor's registration number in the applicable jurisdiction, are as follows: Genesis Global Holdco, LLC (8219), Genesis Global Capital, LLC (8564), and Genesis Asia Pacific Pte. Ltd. (2164R)

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... iii

TABLE OF TERMS .................................................................................................................... x

DOCKET REFERENCE TABLE ............................................................................................ xii

I.    Introduction and Requested Relief ............................................................................. 1

II.    Factual Background .................................................................................................... 4

    A.   The Parties and the Consumer Claim at Issue .................................................... 4

    B.   Genesis's Chapter 11 Case and the Ministerial Claims Trading Notice ................. 4

    C.   DCG's AP and the Debtors' Motion to Enforce the Plan .................................... 4

    D.   The Sep. 2025 "Subpoena Crisis" and the Adjournment That Followed .................. 5

    E.   The Connecticut Action and Comity ................................................................ 5

    F.   The Sokolowskis' Discovery Protocol ............................................................. 5

    G.   The Present Motion ....................................................................................... 6

III.    Legal Standard and Record for Decision ..................................................................... 6

    A.   Declaratory Judgment Case or Controversy .................................................... 6

    B.   Rule 12(b)(1) vs. Contractual Standing (Assignments) ...................................... 6

ARGUMENT ............................................................................................................................... 7

IV.    A Live Controversy Exists Because DCG and the Debtors Have Been—and Continue to Be—Aligned to Reduce DCG's Liability ............................................................................. 7

    A.   The Debtors Are "Aligned on the Requested Relief," Creating a Controversy ......... 7

    B.   Controversy Exists Because the Debtors and DCG Have Participated in a Continuing Pattern of Conduct Designed to Ensure DCG Retains the Sokolowskis' Savings .................... 8

    C.   The Debtors Are Aligned with DCG Over and Over—Same Thesis, Same Relief, Same Playbook .................................................................................................. 11

    D.   The Middle District of Pennsylvania Is Unlikely to Rule on the Direct/Derivative Issue ......... 16

V.    The Sokolowskis Have Not Assigned Their UTPCPL Claims to Jefferies Leveraged Credit Products LLC ..................................................................................................... 17

    A.   Any Contractual Standing Issue, If Relevant at All, Cannot Be Resolved in a 12(b)(1) Motion to Dismiss ................................................................................................ 17

    B.   The Debtors' Rule 12(b)(1) Theory Turns on an Unproduced Contract and Therefore Fails .... 18

    C.   The Only Document the Debtors Point to—the Rule 3001(e) Notice of Transfer—Speaks Solely to a Transfer of the Bankruptcy "Claim" Listed on the Claims Register ...................... 18

    D.   The Debtors Cannot Enforce Any Jefferies–CM LLC Agreement Because They Have Not Proven They Are Parties or Beneficiaries ............................................................... 19

E.    The Debtors Should Be Prohibited from Introducing and Arguing the Assignment Contract—Even Later—Because of Their Flagrant Violation of the Court's Directive ............................. 22

F.    Even DCG Has Stated That the Notice of Transfer of Claim Is Sufficient and That the Full Jefferies Contract Is Unnecessary ................................................................................. 24

G.    The Sokolowskis Are the Only Party Asserting Ownership of the UTPCPL Claim ................. 24

H.    The Debtors' Representatives Contradict Their Own Briefs Too ............................................. 27

I.    Reiterating Previous Arguments on Assignability ................................................................. 29

VI.    The Sealed Exhibits Are Irrelevant to Rule 12(b)(1) and Should Not Slow Adjudication ........ 31

VII.    The UTPCPL Claim Is Direct (Summary; See Prior Briefs) ...................................................... 32

VIII.    ONLY IN THE ALTERNATIVE: A Plan If the Court Is Not Convinced There Is a Live Controversy, or Decides to Explore Assignment ....................................................... 33

A.    If Contract Interpretation is Necessary, Jefferies Should Weigh In First ................................. 34

B.    A Streamlined Method to Protect Jefferies's Rights With Minimal Delay and No Briefing If Jefferies Disclaims—the "Jefferies Election Protocol" ............................................................ 35

C.    The Time-Limited Discovery Protocol Is Tailored to the Unclean Hands and Equity Showings for DCG's Preliminary Injunction Request—And It Minimizes Cost, Delay, And Distraction 37

CONCLUSION ........................................................................................................................................ 39

# TABLE OF AUTHORITIES

## Cases

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997) ................................................................................................ 34

*Aetna Life Ins. Co. v. Haworth*,
300 U.S. 227 (1937) ................................................................................................ 6, 7, 39

*Ayyash v. Bank Al-Madina*,
233 F.R.D. 325 (S.D.N.Y. 2005) ........................................................................................ 23

*Balderston v. Medtronic Sofamor Danek, Inc.*,
285 F.3d 238 (3d Cir. 2002) .............................................................................................. 30

*Block v. First Blood Assocs.*,
988 F.2d 344, 350 (2d Cir. 1993) ....................................................................................... 37

*Bolus v. United Penn Bank*,
525 A.2d 1215 (Pa. Super. Ct. 1987) ................................................................................. 31

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016) ................................................................................... 6, 18, 32

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .............................................................................................. 18

*Commonwealth of Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*,
25 N.Y.3d 543 (2015) ........................................................................................................ 19

*Design Strategy, Inc. v. Davis*,
469 F.3d 284 (2d Cir. 2006) .............................................................................................. 24

*Dexia SA/NV v. Morgan Stanley*,
135 A.D.3d 497 (1st Dep't 2016) ....................................................................................... 19

*Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*,
30 N.Y.3d 704 (2018) .................................................................................................. 20, 21

*Foman v. Davis*,
371 U.S. 178 (1962) ........................................................................................................... 37

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*,
66 N.Y.2d 38 (1985) ................................................................................................... 20, 21

*Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    40 F.3d 63 (3d Cir. 1994) ................................................................. 30

*Global Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006) ............................................................. 18

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016) ............................................................. 18

*Hedlund Mfg. Co. v. Weiser, Stapler & Spivak*,
    539 A.2d 357 (1988) ....................................................................... 30

*Herbert v. Lando*,
    441 U.S. 153 (1979) ....................................................................... 38

*Hewitt v. Helms*,
    482 U.S. 755 (1987) ......................................................................... 8

*Hurley v. Hurley*,
    492 A.2d 439 (1985) ....................................................................... 29

*In re Enron Corp.*,
    379 B.R. 425 (S.D.N.Y. 2007) ......................................................... 30

*In re Enron Corp.*,
    No. 01-16034 (AJG), 2005 WL 3873890 (Bankr. S.D.N.Y. June 16, 2005) ......... 19

*In re Global Crossing, Ltd.*,
    295 B.R. 720 (Bankr. S.D.N.Y. 2003) .............................................. 32

*In re KB Toys, Inc.*,
    736 F.3d 247 (3d Cir. 2013) ........................................................... 30

*In re LATAM Airlines Grp. S.A.*,
    No. 20-11254 (JLG), slip op. (Bankr. S.D.N.Y. Sept. 13, 2022) ............ 19

*In re Orion Pictures Corp.*,
    21 F.3d 24 (2d Cir. 1994) ............................................................... 32

*Keystone Driller Co. v. General Excavator Co.*,
    290 U.S. 240 (1933) ....................................................................... 38

*Klein v. Cadian Capital Mgmt., LP*,
    746 F. App'x 36 (2d Cir. 2018) ....................................................... 35

*Legal Capital, LLC v. Med. Prof'l Liab. Catastrophe Loss Fund*,
    750 A.2d 299 (Pa. 2000) ................................................................. 30

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006) ............................................................... 32

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000) ............................................................ 6, 18

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
  312 U.S. 270 (1941) ..................................................................... 6, 7, 39

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ........................................................... 6, 7, 11, 39

*N. Atl. Operating Co. v. Evergreen Distribs., LLC*,
  293 F.R.D. 363 (E.D.N.Y. 2013) ....................................................... 23

*NAACP v. New York*,
  413 U.S. 345 (1973) ........................................................................... 36

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ............................................................... 18

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ........................................................................... 38

*People v. Gemini Trust Co., LLC et al.*,
  No. 452784/2023 (Sup. Ct. N.Y. Cnty.) ............................................. 16

*Peregrine Myanmar Ltd. v. Segal*,
  89 F.3d 41 (2d Cir. 1996) ................................................................... 35

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*,
  324 U.S. 806 (1945) ........................................................................... 38

*Premium Mortg. Corp. v. Equifax, Inc.*,
  583 F.3d 103 (2d Cir. 2009) ......................................................... 20, 21

*Republic of Philippines v. Pimentel*,
  553 U.S. 851 (2008) ........................................................................... 35

*Rhodes v. Stewart*,
  488 U.S. 1 (1988) ................................................................................. 8

*Salinger v. Colting*,
  607 F.3d 68 (2d Cir. 2010) ................................................................. 39

*Schwartz v. Rockey*,
  932 A.2d 885 (Pa. 2007) ..................................................................... 11

*Seattle Times Co. v. Rhinehart,*
   467 U.S. 20 (1984) ........................................................................... 37

*Sensenig v. Pa. R.R. Co.,*
   78 A. 91 (1910) ............................................................................... 29

*SM Kids, LLC v. Google, LLC,*
   963 F.3d 206 (2d Cir. 2020) ........................................................ 6, 17

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.,*
   118 F.3d 955 (2d Cir. 1997) ............................................................ 24

*Sokolowski v. Digital Currency Group, Inc., et al.,*
   No. 3:25-cv-00870-VAB (D. Conn. May 30, 2025) ............................ x

*Sokolowski v. Digital Currency Group, Inc., et al.,*
   No. 4:25-cv-00001-KM-PJC (M.D. Pa. Jan. 2, 2025) ........................ x

*Stern v. Cosby,*
   246 F.R.D. 453 (S.D.N.Y. 2007) ..................................................... 23

*Stringfellow v. Concerned Neighbors in Action,*
   480 U.S. 370 (1987) ........................................................................ 36

*Subaru Distribs. Corp. v. Subaru of Am., Inc.,*
   425 F.3d 119 (2d Cir. 2005) ....................................................... 20, 21

*Univ. of Tex. v. Camenisch,*
   451 U.S. 390 (1981) ........................................................................ 38

*W.W.W. Assocs. v. Giancontieri,*
   77 N.Y.2d 157 (1990) ...................................................................... 19

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ............................................................................ 38

## Statutes

11 U.S.C. § 105 ..................................................................................... 14

11 U.S.C. § 107(b) ................................................................................. 32

15 Pa. Cons. Stat. § 8818(a) .................................................................. 31

20 Pa. Cons. Stat. §§ 5602(a)(20), 5603(s) ........................................... 31

28 U.S.C. § 2201
(Declaratory Judgment Act) ................................................................................. 11, 39

73 Pa. Stat. Ann. §§ 201-1 et seq.
(UTPCPL) ........................................................................................................ passim

## Rules

Fed. R. Bankr. P. 3001(e) ........................................................................................ 19

Fed. R. Civ. P. 12 ............................................................................................. passim

Fed. R. Civ. P. 13(h) ............................................................................................... 37

Fed. R. Civ. P. 15 ................................................................................................... 37

Fed. R. Civ. P. 17 ............................................................................................. passim

Fed. R. Civ. P. 19 .............................................................................................. 35, 37

Fed. R. Civ. P. 24 ................................................................................................... 35

Fed. R. Civ. P. 37(c)(1) ........................................................................................... 24

Fed. R. Civ. P. 45 ................................................................................................... 23

## Other Documents

*Amended Complaint*
*(Pa. Action, ECF No. 22)* .............................................................................. passim

*Complaint*
*(ECF No. 1)* ................................................................................................ 12, 13, 14

*Debtors' Brief in Support of Their Motion to Dismiss the Counterclaim of Stephen H. and*
*Christopher H. Sokolowski Pursuant to Federal Rule of Bankruptcy Procedure 12(b)(1)*
*(ECF No. 30)* ................................................................................................ passim

*Debtors' Motion for Authority to Redact and File Certain Information Under Seal in Connection*
*with the Debtors' Motion to Dismiss the Counterclaim of Stephen H. and Christopher H.*
*Sokolowski*
*(ECF No. 32)* ........................................................................................................ 31

*Debtors' Motion to Enforce the Plan Against Digital Currency Group, Inc*
  *(Main Case, ECF No. 2180)* ........................................................................ passim

*Debtors' Reply Brief in Support of Their Motion to Enforce the Plan Against Digital Currency Group, Inc.*
  *(Main Case, ECF No. 2217)* ........................................................................ passim

*Declaration of Jennifer M. Selendy in Support of Debtors' Brief in Support of Their Motion to Dismiss the Counterclaim of Stephen H. and Christopher H. Sokolowski Pursuant to Federal Rule of Bankruptcy Procedure 12(b)(1)*
  *(ECF No. 31)* ............................................................................... 9, 31, 32

*Declarations of Stephen H. Sokolowski and Christopher H. Sokolowski in Opposition to Debtors' Motion to Dismiss the Counterclaim*
  *(Oct. 9, 2025)* ............................................................................... passim

*Declarations of Stephen H. Sokolowski and Christopher H. Sokolowski in Opposition to Motion for Preliminary Injunction*
  *(ECF No. 21)* ............................................................................... passim

*Defendants' Answer, Affirmative Defenses, Counterclaim, and Request for Case Management Order*
  *(ECF No. 12)* ............................................................................... passim

*Defendants' Memorandum of Law in Opposition to Motion for Preliminary Injunction*
  *(ECF No. 20)* ............................................................................... passim

*Limited Response and Statement of Neutral Position Regarding Debtors' Motion to Enforce, with Request for Targeted Procedural Relief and Reservation of Rights*
  *(Main Case, ECF No. 2215)* ............................................................................... 5

*Memorandum of Law in Support of Motion for a Preliminary Injunction*
  *(ECF No. 4)* ............................................................................... 8, 13, 14

*Memorandum of Law in Support of Motion to Dismiss of Defendants Digital Currency Group, Inc. and Barry E. Silbert*
  *(Pa. Action, ECF No. 37)* ............................................................................... passim

*Memorandum of Law in Support of Soichiro 'Michael' Moro's Motion to Dismiss Plaintiffs' Amended Complaint*
  *(Pa. Action, ECF No. 38)* ............................................................................... 15, 26

*Motion for Preliminary Injunction*
  *(ECF No. 2)* ............................................................................... 13, 14

*Motion to Dismiss the Counterclaim of Stephen H. and Christopher H. Sokolowski Pursuant to Federal Rule of Bankruptcy Procedure 12(b)(1)*
  *(ECF No. 29)* ............................................................................... 1, 6

*Notice of Adjournment of September 15, 2025 Hearing*
    (ECF No. 24)................................................................................................................. 22

*Notice of Stay in Connecticut*
    (ECF No. 26.).................................................................................................................. 5

*Objection to Debtors' Motion to Enforce the Plan*
    *(Main Case, ECF No. 2213)* ............................................................................ passim

*Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss*
    *(Pa. Action, ECF No. 44)* ................................................................................ passim

*Reply Memorandum of Law in Support of Motion for a Preliminary Injunction*
    *(ECF No. 25)*...................................................................................................... passim

*Reply Memorandum of Law in Support of Motion to Dismiss of Defendants Digital Currency
Group, Inc. and Barry E. Silbert*
    *(Pa. Action, ECF No. 52)* ........................................................................ 13, 16, 26

*Request for Expedited Informal Discovery Conference*
    (ECF No. 23)............................................................................................................ 22, 23

Transcript of Aug. 15, 2025 Hearing
    (Main Case, ECF No. 2223) ............................................................................ passim

# TABLE OF TERMS

Alvarez.................................................................................................... Amelia Alvarez

AP ..............................................................................................Adversary Proceeding

Aug. 15, 2025 Hr'g Tr.......................................................... Transcript of Aug. 15, 2025 Hearing
(Main Case, ECF No. 2213)

Boyapati ...................................................................................................... Vijay Boyapati

Conn. Action .................................................... *Sokolowski v. Digital Currency Group, Inc., et al.*,
No. 3:25-cv-00870-VAB (D. Conn. May 30, 2025)

CM LLC....................................................................................Cryptocurrency Management LLC

DCG ............................................................................................. Digital Currency Group, Inc.

Debtors....................................................................................... Wind-Down Debtors
(Genesis Global Holdco, LLC, Genesis Global Capital, LLC,
and Genesis Asia Pacific Pte. Ltd.)

DP ......................................................................................Discovery Protocol
[ECF No. 21, Ex. A]

Genesis ...............................................................................Genesis Global Capital LLC

Jefferies .........................................................................Jefferies Leveraged Credit Products, LLC

LOC..........................................................................[Debtors'] Litigation Oversight Committee

Main Case ............................................................... *In re Genesis Global Holdco, LLC*,
No. 23-10063 (SHL) (Bankr. S.D.N.Y.)

MDPA ...................................................................... Middle District of Pennsylvania

Moro.................................................................................... Soichiro "Michael" Moro

MTD........................................................................................................Motion to Dismiss

Oct. 9 Decls.................*Declarations of Stephen H. Sokolowski and Christopher H. Sokolowski in
Opposition to Debtors' Motion to Dismiss the Counterclaim*
(Oct. 9, 2025)

Pa. Action ....................................................... *Sokolowski v. Digital Currency Group, Inc, et al.*,
No. 4:25-cv-00001-KM-PJC (M.D. Pa. Jan. 2, 2025)

Pa. Complaint ................................................................................... Pa. Action, ECF No.22
[First Amended Complaint]

PI ................................................................................................... Preliminary Injunction

PII ............................................................................ Personally Identifiable Information

Silbert .................................................................................................... Barry E. Silbert

Subpoena Crisis .................................................................................. Section V.E, *supra*

UTPCPL ............................................... [Pa.] Unfair Trade Practices and Consumer Protection Law
(73 Pa. Stat. Ann. §§ 201-1, et seq.)

WDOC ................................................................... [Debtors'] Wind-Down Oversight Committee

# DOCKET REFERENCE TABLE

| Case | ECF No. | Title |
|------|---------|-------|
| Adversary Proceeding 25-01111 | 1 | *Complaint* |
| | 2 | *Motion for Preliminary Injunction* |
| | 3-3 | [Copy of Amended Complaint (Pa. Action, ECF No. 22)] |
| | 4 | *Memorandum of Law in Support of Motion for a Preliminary Injunction* |
| | 10 | [Copy of Main Case, ECF No. 2215] |
| | 12 | *Defendants' Answer, Affirmative Defenses, Counterclaim, and Request for Case Management Order* |
| | 20 | *Defendants' Memorandum of Law in Opposition to Motion for Preliminary Injunction* |
| | 21 | *Declarations of Stephen H. Sokolowski and Christopher H. Sokolowski in Opposition to Motion for Preliminary Injunction)* |
| | 23 | *Request for Expedited Informal Discovery Conference* |
| | 24 | *Notice of Adjournment of September 15, 2025 Hearing* |
| | 25 | *Reply Memorandum of Law in Support of Motion for a Preliminary Injunction* |
| | 26 | *Notice of Stay in Connecticut* |
| | 29 | *Motion to Dismiss the Counterclaim of Stephen H. and Christopher H. Sokolowski Pursuant to Federal Rule of Bankruptcy Procedure 12(b)(1)* |
| | 30 | *Debtors' Brief in Support of Their Motion to Dismiss the Counterclaim of Stephen H. and Christopher H. Sokolowski Pursuant to Federal Rule of Bankruptcy Procedure 12(b)(1)* |
| | 31 | *Declaration of Jennifer M. Selendy in Support of Debtors' Brief in Support of Their Motion to Dismiss the Counterclaim of Stephen H. and Christopher H. Sokolowski Pursuant to Federal Rule of Bankruptcy Procedure 12(b)(1 )* |
| | 31-1 | [Copy of Main Case, ECF No. 50] |

| Case | ECF No. | Title |
|------|---------|-------|
| | 32 | *Debtors' Motion for Authority to Redact and File Certain Information Under Seal in Connection with the Debtors' Motion to Dismiss the Counterclaim of Stephen H. and Christopher H. Sokolowski* |
| | Not yet assigned | *Counterclaim Plaintiffs' Memorandum of Law In Opposition to Debtors' Motion to Dismiss the Counterclaim* [This Brief] |
| | Not yet assigned | *Declarations of Stephen H. Sokolowski and Christopher H. Sokolowski in Opposition to Debtors' Motion to Dismiss the Counterclaim* |
| Main Case 23-10063 | 50 | *Notice of Transfer of Claim – E1* [Copied in AP, ECF No. 31-1 & Pa. Action, ECF No. 37-2] |
| | 2180 | *Debtors' Motion to Enforce the Plan Against Digital Currency Group, Inc* |
| | 2213 | *Objection to Debtors' Motion to Enforce the Plan* |
| | 2214 | *Declaration of Benjamin S. Kaminetzky in Support of Digital Currency Group Inc.'s Objection to Debtors' Motion to Enforce the Plan* |
| | 2215 | *Limited Response and Statement of Neutral Position Regarding Debtors' Motion to Enforce, with Request for Targeted Procedural Relief and Reservation of Rights* [Copied in AP, ECF No. 10] |
| | 2217 | *Debtors' Reply Brief in Support of Their Motion to Enforce the Plan Against Digital Currency Group, Inc.* |
| | 2218 | *Declaration of Jennifer M. Selendy In Support of Debtors' Reply Brief In Support Of Their Motion To Enforce The Plan Against Digital Currency Group, Inc.* |
| | 2223 | Transcript of Aug. 15, 2025 Hearing ) |
| Pa. Action 3:25-CV-1 | 22 | *Amended Complaint* [Copied in AP, ECF No. 3-3] |
| | 37 | *Memorandum of Law in Support of Motion to Dismiss of Defendants Digital Currency Group, Inc. and Barry E. Silbert* |
| | 37-2 | [Copy of Main Case, ECF No. 50] |

| Case | ECF No. | Title |
|------|---------|-------|
| | 38 | *Memorandum of Law in Support of Soichiro 'Michael' Moro's Motion to Dismiss Plaintiffs' Amended Complaint* |
| | 44 | *Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss* |
| | 52 | *Reply Memorandum of Law in Support of Motion to Dismiss of Defendants Digital Currency Group, Inc. and Barry E. Silbert* |
| | 53 | *Reply in Support of Soichiro 'Michael' Moro's Motion to Dismiss Plaintiffs' Amended Complaint* |

# I.    Introduction and Requested Relief

> "[G]iven that there's litigation pending in various different jurisdictions, what you all need is some clarity and some finality. So I think actually we all may be singing from the same sheet of music on that, that nobody wants to have anything that is, that is not in sort of any—in any way can be viewed as interim."

Hon. Sean H. Lane, Aug. 15, 2025 Hr'g Tr. at 47:1-6

The Debtors move to dismiss the counterclaim for declaratory relief filed by Stephen H. Sokolowski and Christopher H. Sokolowski (together, the "Sokolowskis" or "Counterclaim Plaintiffs"). See Counterclaim (ECF No. 12); Motion (ECF No. 29); Mem. in Supp. (ECF No. 30)[1]). The Debtors' motion relies on two arguments that do not withstand scrutiny: (1) that no live controversy exists because Digital Currency Group, Inc. ("DCG") is the nominal plaintiff in this adversary proceeding ("AP"), and (2) that a private "claim sale and purchase agreement" with Jefferies Leveraged Credit Products LLC ("Jefferies") stripped the Sokolowskis of their Pennsylvania Unfair Trade Practices and Consumer Protection Law claim (73 Pa. Stat. Ann. §§ 201-1, et seq.; "UTPCPL"). Neither contention supports dismissal under Fed. R. Civ. P. 12(b)(1).

As to the Debtors' argument that no live controversy exists, this AP is the latest instance of a larger pattern of coordinated conduct in which the Debtors and DCG have worked together to shield DCG from liability arising from DCG's, its CEO's, and the Debtors' CEO's participation in the original balance sheet fraud alleged in the Sokolowskis' Pa. Complaint. (Pa. Action, ECF No. 22) (the "First Phase.") The Debtors, who *started* this live controversy along

---

[1] This brief references documents from three different dockets. All documents referenced as "ECF No." (without any prefix) are part of this Adversary Proceeding's docket. Documents from other dockets have a prefix specifying the case (e.g. "Pa. Action, ECF No."). For convenience, we have provided a Docket Reference Table in the front matter of this brief.

with DCG, were "aligned on the requested relief" and contemplated a "me too" submission with DCG before the AP was filed (the "Second Phase.") Main Case, ECF No. 2217 at 9–10 & n.7. This continuing course of overall conduct involves DCG and different leaders of the Debtors working to achieve the same goal: ensuring that DCG retains most of the Sokolowskis' life savings. The Second Phase is detailed at length in ECF No. 20, Section VI.

As to the standing arguments, they are not newly contemplated by the Debtors because of an unexpected counterclaim, but instead are the continuing execution of the Second Phase. On the evening of July 25, 2025, the day of Judge Denise Cote's *sua sponte* order's amendment deadline and the day that former AP Defendant Vincent Falco dismissed his case, Debtors' Litigation Oversight Committee ("LOC") member Vijay Boyapati ("Boyapati") contacted the Sokolowskis to meet regarding their claims against DCG. ECF No. 20 at 26. After starting with congratulations over becoming "legendary" among the creditor body for their AI research and asking if the Sokolowskis had seen the Debtors' Del. complaint, the *second substantive comment ever* involved Boyapati questioning the Sokolowskis and stating that he "**thought you had assigned**" the claims. Oct. 9 Decls.[2] ¶ 6. This discussion occurred even before Boyapati's later assertion that he had "not read" the Pa. complaint and the later attempt to obtain a Jefferies contract without anything concrete in return. ECF No. 20 at 28, 29. The Debtors would, through questioning, requests, chambers emails and multiple targets of the Subpoena Crisis (Section V.E, *supra*) attempt and fail to gather evidence for this assignment argument no fewer than 8 times.

Yet, the Jefferies contract—the linchpin of the Debtors' theory—has never been put in the record, and the only document the Debtors do point to (ECF No. 30 at 6-7) is a ministerial Fed. R. Bankr. P. 3001(e) *Notice of Transfer* for a bankruptcy proof of claim (ECF No. 31-1), not a

---

[2] "Oct 9 Decls." refers to the Declarations accompanying this memorandum: *Declarations of Stephen H. Sokolowski and Christopher H. Sokolowski in Opposition to Debtors' Motion to Dismiss the Counterclaim*, dated Oct. 9, 2025.

global assignment of personal consumer fraud claims. A movant pursuing a factual Rule 12(b)(1)
challenge bears the evidentiary burden; attorney argument about a non-record agreement is not
evidence. And where the standing debate turns on the validity or scope of a purported
assignment, the Second Circuit instructs courts to treat the issue as one of contractual standing
under Rule 12(b)(6) (or on a fuller record), not as a jurisdictional defect. At a minimum, the
remedy is not dismissal but to permit Jefferies to choose its position under Fed. R. Civ. P. 17.

Further, as pleaded in *both* their Pa. Complaint *and* the N.Y. Counterclaim,
Cryptocurrency Management LLC ("CM LLC")—the alleged assignment counterparty—never
owned the Sokolowskis' UTPCPL claims. Pa. Action, ECF No. 22. ¶¶ 31-36; ECF No. 12 ¶ 37. If
CM LLC had owned the UTPCPL claim, the Sokolowskis' Pa. Complaint would fail regardless
of assignment. By adjudicating a contract that the Debtors admit was signed by CM LLC, the
Court would be wasting judicial resources on an advisory opinion based on a case that cannot
exist.

### Requested Relief:

For these reasons, the Court should follow the Proposed Order (Ex. A[3]):

**Deny the Debtors' Motion to Dismiss**. The Debtors have not carried their burden on a
factual Rule 12(b)(1) challenge. Their assignment theory, if it matters at all, sounds in contractual
standing for merits adjudication—not jurisdiction.

**In the alternative**—only if the Court is not convinced there is a live controversy; or
reaches assignment and despite the Subpoena Crisis (Section V.E, *supra*) permits the Debtors to

---

[3]Citations in the form of "Ex." without being preceded by reference to another document are Exhibits in the
*Declarations of Stephen H. Sokolowski and Christopher H. Sokolowski in Opposition to Debtors' Motion to Dismiss
the Counterclaim*, dated Oct. 9, 2025.

rely on an assignment contract—adopt the **Discovery Protocol** (ECF No. 21, Ex. A) ("DP**"**) and

the **Jefferies Election Protocol** (Section VIII.B, *supra*) in parallel.

## II.    Factual Background

### A.    The Parties and the Consumer Claim at Issue

Stephen and Christopher Sokolowski are Pennsylvania consumers who, as alleged in the

first-filed Pa. Action, purchased a retail financial service marketed with representations that

proved false and misleading, and suffered an ascertainable loss as a result. Their UTPCPL claim

seeks consumer remedies (including treble damages and fees) that run to individual purchasers,

not to any bankruptcy estate. See Sokolowskis' Pa. Complaint (Pa. Action, ECF No. 22)

### B.    Genesis's Chapter 11 Case and the Ministerial Claims Trading Notice

Genesis Global Holdco, LLC ("Genesis") and affiliates filed Chapter 11 bankruptcy on

Jan. 19, 2023. CM LLC (an entity owned by Stephen H. Sokolowski) later filed a proof of claim

in the Genesis bankruptcy case. On Jan. 31, 2023, Jefferies filed a ministerial notice of transfer

of a portion of CM LLC's bankruptcy claim using Official Form 2100A ("Notice of Transfer of

Claim – E1"). ECF No. 31-1.

### C.    DCG's AP and the Debtors' Motion to Enforce the Plan

On July 8, 2025, DCG, having worked with the Debtors, filed this AP seeking to enjoin

the Sokolowskis from prosecuting their first-filed district-court cases. One week later, the

Debtors moved in the main bankruptcy case to "enforce the Plan"—not to oppose DCG's goals,

but to insist that *they*—not DCG—should control how to approach the Sokolowskis' claims. Main Case, ECF No. 2180.

A full review of how the Debtors and DCG are fully aligned with identical positions is presented in Section IV.C, *supra*. Only an adjudication of the "direct" issue binding both parties will permanently resolve the live controversy at issue. ECF No. 12.

### D.     The Sep. 2025 "Subpoena Crisis" and the Adjournment That Followed

After chambers indicated on Sep. 4 that the Court would proceed toward the Sep. 15 hearing, the Debtors on Sep. 8 served non-party subpoenas with a three-day return (by Sept. 11 at 5:00 p.m. in Manhattan) and a *subpoena ad testificandum* for the Sep. 15 hearing—without a Rule 26(f) conference or court-authorized expedited discovery. On Sep. 10, the Sokolowskis requested an expedited informal discovery conference (ECF No. 23); on Sep. 11, the Sep. 15 hearing was adjourned. See Section V.E (timeline of events, legal consequences, and remedy).

### E.     The Connecticut Action and Comity

Related proceedings in the District of Connecticut were stayed pending the Pa. Court's adjudication of overlapping issues; all parties in Conn. agreed on the stay. See ECF No. 26 (Notice of Stay in Conn.) and Main Case, ECF No. 2215 ¶ 1 (summary of proceedings in Conn.).

### F.     The Sokolowskis' Discovery Protocol

With the PI motion pending in this AP, the Sokolowskis filed a narrow, time-limited DP to be used to evaluate the equities involved in DCG's complaint (unclean hands, balance of equities, status quo, public interest). ECF No. 21, Ex. A (Proposed DP).

**G.     The Present Motion**

On Sep. 22, 2025, the Debtors moved to dismiss the counterclaim under Rule 12(b)(1).

ECF Nos. 29,30.

## III.     Legal Standard and Record for Decision

**A.     Declaratory Judgment Case or Controversy**

Article III is satisfied where there is a substantial, real, and immediate controversy

between parties with adverse legal interests; the dispute must be definite and concrete, not

hypothetical. See *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *MedImmune,*

*Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227,

240–41 (1937). .

**B.     Rule 12(b)(1) vs. Contractual Standing (Assignments)**

On a Rule 12(b)(1) motion, the party invoking federal jurisdiction bears the burden of

establishing it by a preponderance, and the court may consider evidence outside the pleadings on

a factual challenge; on a facial challenge, the court accepts well-pleaded jurisdictional

allegations as true. See *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) ;

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Where the standing dispute turns on

the validity or scope of an assignment, that is an issue of contractual standing (the merits)—not

Article III—and should be addressed under Rule 12(b)(6) (and, if the Court considers

extra-pleading material, via conversion under Rule 12(d)). *SM Kids, LLC v. Google, LLC*, 963

F.3d 206, 211–14 (2d Cir. 2020).

6

**ARGUMENT**

## IV.   A Live Controversy Exists Because DCG and the Debtors Have Been— and Continue to Be—Aligned to Reduce DCG's Liability

### A.   The Debtors Are "Aligned on the Requested Relief," Creating a Controversy

Article III requires a "definite and concrete" dispute between parties with "adverse legal interests," not a hypothetical or advisory quarrel. *Aetna*, 300 U.S. 227 at 240–41. In the declaratory judgment posture, the question is whether there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *Md. Cas.*, 312 U.S. at 273; see also *MedImmune,* 549 U.S. at 127 (same). Those requirements are easily met here.

The record shows the Debtors and DCG privately working to obtain the same outcome— an injunction against the Sokolowskis—while putting on a public face of controversy in their briefs over who and which legal method achieves the injunction. DCG recounts that the Debtors reviewed DCG's draft of the PI motion and conveyed alignment on the relief before pivoting at docketing. Main Case, ECF No. 2213 at 6–7 (describing Debtors' last-minute assertion they were "not aligned" after having previously indicated support). DCG likewise asserts "that the Debtors are the only party that could prosecute such claims—as the Debtors are currently doing in this Court and in Delaware," i.e., that the Debtors are pursuing substantively the same theory DCG seeks to enforce by injunction. ECF No. 25 at 17. The Debtors' own filings confirm that account: they invoke plan provisions to stop "third parties" from litigating claims the Debtors say belong to the estate; and they argue for holding DCG's action in abeyance while they themselves prosecute claims premised on the same alleged misconduct. Main Case, ECF No. 2180 ¶¶ 2, 12,

27. The Debtors cannot plausibly contend there is no live controversy while simultaneously pressing their own arguments that would achieve the same injunctive effect. See also Sokolowskis' Answer and Counterclaim (ECF No. 12) (joining the Debtors to the declaratory count and explaining the parties' alignment on requested relief), and how an adjudication here will "[affect] the behavior of the defendant toward the plaintiff." *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (per curiam) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)).

The controversy is not theoretical; it is the determining factor in how the Sokolowskis, their families, and their households will live the remainder of their lives, and it is being litigated now.

## B.      Controversy Exists Because the Debtors and DCG Have Participated in a Continuing Pattern of Conduct Designed to Ensure DCG Retains the Sokolowskis' Savings

The Debtors and DCG have participated in a continuing pattern of conduct from 2022 to 2025. The first Emails on the current record in the Second Phase were written three years *to the day* after the previous leader of Genesis participated in the key act of the First Phase with DCG—signing the fraudulent promissory note. Sokolowskis' Pa. Complaint (Pa. Action, ECF No. 22), Exs. B & C. While the leaders of one of the organizations, their publicly stated goals, and the methods used are different, the effect is strikingly similar—misleading the Sokolowskis to ensure that DCG retains the Sokolowskis' life savings.

The Second Phase has involved at minimum, even before discovery:

- The Debtors coordinating to create an AP using DCG's PI draft, which they knew or should have read carefully to notice that it includes no Pa. case citations (ECF No. 4)),

- Supporting an AP that was filed one day after a sua sponte game-changing order in the Falco case (ECF No. 20 Section IV.B.9),

- Making private statements to the Sokolowskis that blatantly contradict the parties' public positions, reiterated multiple times to confirm they were no accident, and which imply there was no reason to file the AP to begin with (Id. Sections IV.B.16, IV.B.22),

- Sending improper subpoenas after the Court stated that a hearing would proceed without delay (Ex. B) and refusing to discuss basic facts about the witness (Ex. H),

- Either not reading/understanding a complaint underlying their case or making a misleading statement claiming ignorance of that complaint (Id. Section IV.B.21),

- Repeatedly pressuring the Sokolowskis to forfeit most of their life savings for nothing in return (Id. Section IV.B.16),

- Later pressuring for the assignment agreement that the Debtors are now using to argue to deprive the Sokolowskis of those savings (again for nothing in return) (Id. Section IV.B.22), and

- Filing a Motion to Enforce the Plan that blatantly contradicts the Debtors' "alignment on the requested relief" from days earlier, implying in public they were now enemies; but then *still* working through warnings and contradictory statements in private meetings, and sending improper subpoenas to shield DCG (Main Case, ECF No. 2217 at 9–10 & n.7).

Debtors' representatives signed the Debtors' Mem. in Supp. of MTD Counterclaim (ECF No. 30) and the Selendy Decl. in Supp. of Debtors' MTD Counterclaim (ECF No. 31), but that

brief does not deny even one of the alleged contradictions in the representatives' statements to the Sokolowskis. Neither has DCG's Reply Mem. in Supp. of Mot. for PI (ECF No. 25). There also exist multiple external events—the "elongated briefing schedule," the UBMI v. PROHASHING suit, the Wells Fargo suit served the same day as the AP—whose coincidental timing remains unaddressed by the Debtors. ECF No. 20 Sections VI.B.7, VI.B.9-10

After all that, the Debtors still devote a significant portion of their briefing suggesting they are bitter enemies with DCG. The Debtors cannot litigate as DCG's adversary in Delaware while acting as DCG's ally here: the record reflects they received an advance draft of DCG's PI motion and initially were "aligned on the requested relief" to enjoin the Sokolowskis. Main Case, ECF No. 2217 at 9–10 & n.7 And, while participation in a coordinated plan still imputes the conduct of the Debtors onto DCG, it could be interpreted that, as of the submission of this memorandum, there is *more evidence* that supports the Debtors' culpability in this coordination than DCG's.

The Debtors have attempted to claim that *DCG* (not themselves) was using this AP to its advantage in the Delaware litigation. Main Case, ECF No. 2180 ¶ 35-37. The Court, however, should note that the Debtors' LOC and attorneys used the very same AP to pressure the Sokolowskis to dismiss their cases, a result that if successful might influence the Del. litigation by reducing the production of evidence of their predecessors' (and now their own) conduct; and therefore they have profoundly unclean hands both in this AP *and* in their Delaware litigation. Whatever the full record proves in the end, the Court should disregard the Debtors' implications that they are helpless victims of DCG's actions (e.g. ECF No. 30 at 4-5).

The Sokolowskis, on the other hand, have offered to assist the Debtors against DCG every step of the way—*initiating* the first contact, sharing complaints and evidence, offering to

coordinate on discovery, and suggesting the stipulation that would moot this AP so they could fight DCG together. ECF No. 20 Sections VI.B.1, VI.B.6, VI.B.20). The Sokolowskis remain open to this solution today.  Yet, the Debtors rejected all of these overtures, and created a controversy by continuing with DCG to expand the litigation web as part of their plan instead.

DCG's participation in the long-term overall scheme is relevant in Pa. because it represents a multi-phase continuing course of conduct with scinter that will strongly support treble damages when that phase arrives in the Pa. Action. See *Schwartz v. Rockey*, 932 A.2d 885, 898–99 (Pa. 2007) (UTPCPL treble damages have a strong punitive dynamic; courts should focus on intentional or reckless, wrongful conduct; reviewed for rationality). DCG's participation is also relevant because its CEO, Pa. defendant Barry Silbert ("Silbert"), directed, knew, or should have known of the Second Phase, the communications of which reached into Pa. and established personal jurisdiction there for the overall scheme. The Debtors' participation is relevant, because by coordinating with DCG and supporting DCG's objectives through, at minimum, the creation and prosecution of this AP, the Debtors have created a live controversy under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. See *MedImmune,* 549 U.S. at 127 (explaining that the Act requires a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment").

## C.   The Debtors Are Aligned with DCG Over and Over—Same Thesis, Same Relief, Same Playbook

The Debtors suggest there is no adversity because "DCG is the plaintiff." ECF No. 30 at 2, 12–13 (arguing that the Sokolowskis "cannot establish a necessary adverse legal interest or injury to satisfy the 'actual controversy' requirement" since they assigned away their rights and that only DCG remains as plaintiff). However, even though the Debtors and DCG publicly claim

to have deep differences over liability in Del., a comparison of their statements in Table 1, *supra*

actually shows complete convergence and sustained coordination on many of their legal

positions, with the Debtors' Mem. in Supp. of Mot. to Dismiss Counterclaim (ECF No. 30)

recycling many arguments from DCG and Silbert's Mem. in Supp. of Mot. to Dismiss (Pa.) (Pa.

Action, ECF No. 37), which was submitted long ago in April 2025:

**Table 1: DCG's and the Debtors' Coordinated Positions**

| Issue | DCG's position | Debtors' position |
|---|---|---|
| Exclusive control: only Debtors may bring estate causes of action | *"Bankruptcy law, the confirmed Plan, and the Confirmation Order all provide that the Debtors alone may pursue estate causes of action."*<br><br>ECF No. 25 at 3–5 | *"All parties agree that the Debtors have the exclusive right under the Plan to control the Genesis estate's Retained Causes of Action."*<br><br>Main Case, ECF No. 2217 at 1<br><br>*"To be clear, only the Debtors can bring estate causes of action."*<br><br>ECF No. 30 at 3, 12–13 |
| Stop the Sokolowski suits | DCG seeks an injunction to enjoin the "creditor" complaints against DCG.<br><br>DCG's AP Complaint (ECF No. 1) | Debtors seek to enforce the Plan so the Debtors, not third parties, control any estate claims; they alternatively ask to structure the docket (dismiss/abeyance) to preclude third party prosecution while the Debtors proceed.<br><br>Main Case, ECF No. 2180 ¶¶ 22–28; 2217 at 4-6,9-12, |
| Centralization / avoid duplication | *"This Court should decide the preliminary injunction to centralize disputes about the Plan, bankruptcy law, and estate property."*<br><br>Main Case, ECF No. 2213 at 12 | The Debtors want to manage the "creditor" actions *"without burdening numerous courts with duplicative litigation."*<br><br>Main Case, ECF No. 2217 at 5 |

| Issue | DCG's position | Debtors' position |
|---|---|---|
| The Sokolowskis' claim is not theirs to pursue | *"The UTPCPL claim neither accrued to nor belongs to Plaintiffs."*<br><br>Pa. Action, ECF No. 37 at 5<br><br>*"Any UTPCPL claim would belong to [CM LLC], not Plaintiffs."*<br><br>Pa. Action, ECF No. 52 at 3 | *"The Sokolowskis lack standing to seek declaratory relief for claims they do not own."*<br><br>ECF No. 30 at 3, 12–13 |
| The Sokolowskis are "creditors" fallacy characterization | 25 uses in briefs and motions<br><br>ECF Nos. 1,2,4,25; Main Case, ECF No. 2213 | One fewer: 24 uses in briefs, motions, and the Aug. 15 hearing.<br><br>Main Case, ECF Nos. 2180, 2217; Aug. 15, 2025 Hr'g Tr. |
| Plan/Confirmation Order as the source of exclusivity | PI Reply grounds exclusivity in the Plan and Confirmation Order.<br><br>ECF No. 25 at 3–5 | Debtors repeatedly invoke Plan Art. IV.B.14 and the Confirmation Order's vesting language to assert exclusive control over Retained Causes of Action.<br><br>Main Case, ECF No. 2180 at 5; 2217 at 9-10 & n.3 |
| Public interest framing: stop parallel litigations | DCG argues the creditor suits *"would be a chaotic race to the courthouse"* and should be enjoined.<br><br>ECF No. 25 at 6 | Debtors emphasize efficiency and estate interest in avoiding multiple forums—i.e. no duplicative litigation—through plan enforcement/abeyance.<br><br>Main Case, ECF No. 2217 at 5 |
| Admissions of coordination/alignment | DCG *"provided the Debtors with a draft"* of the PI brief and believed the Debtors supported the relief sought.<br><br>Main Case, ECF No. 2213 at 4-7 | Debtors: after reviewing DCG's draft, they were *"aligned on the requested relief"* and contemplated a *"'me too' submission ... in support of enjoining the actions."*<br><br>Main Case, ECF No. 2217 at 9–10 & n.7 |

| Issue | DCG's position | Debtors' position |
|---|---|---|
| Debtors are already pursuing claims premised on the same core alleged misconduct | *"Whether the Debtors could bring a UTPCPL claim is irrelevant: the Debtors are pursuing claims premised on the same allegations."*<br><br>ECF No. 25 at 8 | *"The Debtors … have been discharging their fiduciary obligations … including by filing the Delaware Action and a separate preference action against DCG …."*<br><br>Main Case, ECF No. 2180 at 6 |
| Plan/ 11 U.S.C. § 105 pathway to halt third-party suits | DCG seeks § 105 relief to enforce Plan/Confirmation rights and halt the creditor suits.<br><br>ECF Nos. 1-2,4 | Debtors expressly reserve their own right *"under the Plan, Confirmation Order, and other applicable law (including Section 105) to seek to enjoin third-party prosecution of Retained Causes of Action."*<br><br>Main Case, ECF No. 2180 at 2 & n.4 |
| Falco as a "derivative claim" exemplar | DCG's public litigation stance is that Falco's claims are derivative estate claims.<br><br>Main Case, ECF No. 2213 at 5 | Debtors cite that same stance to support plan enforcement: DCG *"moved to dismiss [Falco] on grounds including that Falco lacks standing because he brings derivative estate claims."*<br><br>Main Case, ECF No. 2180 at 7-9 |
| Harm to the estates if parallel suits proceed | *"The Sokolowskis' suits irreparably harm the Estates and DCG."*<br><br>ECF No. 25 at 11–13 | Debtors argue centralized control is necessary to act *"in the best interest of the estate"* and avoid duplication across courts.<br><br>Main Case, ECF No. 2217 at 5 |

14

| Issue | DCG's position | Debtors' position |
|---|---|---|
| "Same coins" fallacy argument | *"In fact, Plaintiffs even seek to recover through this action the 'exact coins' that CM lent to Genesis"*<br><br>Pa. Action, ECF No. 37 at 20 | |
| The Sokolowskis' UTPCPL claims were assigned to Jefferies | *"Plaintiffs' purported UTPCPL claim and CM's claims under the MLA and Notice therefore are inseparable, and CM's assignment—for which Plaintiffs were compensated—also assigned and extinguished any purported claims Plaintiffs may have had."*<br><br>Pa. Action, ECF No. 37 at 20 | *"The Sokolowskis cannot have it both ways: they cannot concede assigning all their rights under the MLA—which include rights to in-kind distribution under the Plan for cryptocurrency loaned under the MLA—and at the same time sue to obtain recovery of the exact same cryptocurrency under the UPTCPL."*<br><br>ECF No. 30 at 16 |

Not only are the positions of the Debtors and DCG striking, but the parallels in the offered defenses of Genesis's management are striking. Just as former Genesis CEO Soichiro "Michael" Moro ("Moro")'s defense in the Pa. Action—that he "resigned" before the fraudulent balance sheets were sent to the Sokolowskis—does not absolve him of his prior participation in the First Phase (Pa. Action, ECF No. 38 at 15), the current Genesis LOC's defense that they now disapproved of their coordinated plan three seconds before the AP complaint was filed (Main

Case, ECF No. 2213 at 2) fails to excuse them of their participation in the Second Phase. See Pa.

Action, ECF No. 44, Introduction (discussing New York court's rejection of DCG/Silbert/Moro's

argument that mere knowledge and late-stage withdrawal excuses liability), citing *People v.*

*Gemini Trust Co., LLC et al.*, No. 452784/2023 (Sup. Ct. N.Y. Cnty.), Dkt. 116 at 17

("allegations plainly establish that Silbert and Moro had knowledge of the purported fraud and

participated in the overall scheme."))

      The only major difference between the Debtors and DCG is that DCG acts openly

through filings in court, whereas the Debtors publicly blame DCG but act privately through

meetings that the Sokolowskis contend have contained misleading statements, as well as by

sending subpoenas that are facially deficient and unreasonable. They are both involved in the

same continuing overall pattern of conduct and therefore are necessary parties.

**D.     The Middle District of Pennsylvania Is Unlikely to Rule on the Direct/Derivative Issue**

      The Debtors have argued to delay or dismiss any proceedings in this AP until the Middle

District of Pennsylvania ("MDPA") court rules on the pending MTD. They have also said that

"DCG has already brought dispositive motions as to the Sokolowski claims in Pennsylvania, all

the exact same claims." Aug. 15, 2025 Hr'g Tr. at 49:24-50:1. However, the direct/derivative

issue was not actually argued in the MDPA. DCG mentioned the "derivative" defense only in a

single footnote (Pa. Action, ECF No. 52 at 24 n.12), and the Debtors themselves acknowledge

merely that DCG's MTD in the MDPA is "fully briefed" and "ripe for decision"—never once

claiming in any of their briefs that the MDPA court has been asked to decide directness. ECF No.

30 at 9. DCG's footnote in the MDPA explicitly stated that the reason it was filing this AP in NY

was to decide the direct/derivative issue, which would, if anything, suggest to the MDPA court

16

that it should *not* adjudicate that specific issue. The live controversy is extensively briefed and

ready to be decided in this Court; the Sokolowskis should not be required to litigate for years to a

verdict in Pa., only to have the Debtors suddenly appear with the "derivative" defense to try to

take proceeds.

## V.   The Sokolowskis Have Not Assigned Their UTPCPL Claims to Jefferies Leveraged Credit Products LLC

Given the Debtors' latest change in position, how does one reconcile the Debtors and

DCG not listing Jefferies as the original defendant in their AP instead of the Sokolowskis?

## A.   Any Contractual Standing Issue, If Relevant at All, Cannot Be Resolved in a 12(b)(1) Motion to Dismiss

The Second Circuit has squarely held that the validity and scope of an asserted

assignment goes to contractual standing (the merits), not Article III. In *SM Kids, LLC v. Google,*

*LLC*, the court vacated a 12(b)(1) dismissal where the district court decided an assignment

dispute as a jurisdictional matter, explaining that "contractual standing is distinct from Article III

standing and does not implicate subject matter jurisdiction." 963 F.3d at 211–12. The panel

further noted that, had the motion been treated under Rule 12(b)(6), review would have been

limited to the pleadings—or else converted under Rule 12(d) if extra-pleading evidence were

considered. Id. at 213–14. The Debtors' motion repeats the *SM Kids* error: they seek a

jurisdictional dismissal based on conjecture about an unproduced Jefferies agreement and a

ministerial Rule 3001(e) claims-transfer notice. Under *SM Kids*, that argument belongs—if

anywhere—on the merits, not in a 12(b)(1) motion that shifts the burden and invites discovery.

17

**B.    The Debtors' Rule 12(b)(1) Theory Turns on an Unproduced Contract and Therefore Fails**

The Debtors ask the Court to dismiss for lack of subject matter jurisdiction on the premise that a private "claim sale and purchase agreement" with Jefferies divested the Sokolowskis of the very rights at issue, but *they do not provide the agreement*. Federal courts will not grant a motion to dismiss ("MTD") based on speculation about an extrinsic contract that is neither attached to, incorporated by reference in, nor integral to the pleading. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559–60 (2d Cir. 2016); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156–57 (2d Cir. 2006); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–54 (2d Cir. 2002) . And even where a document is asserted to be "integral," it "may not be considered" at the Rule 12 stage if its "relevance, authenticity, or accuracy" is disputed—precisely the posture here because the Sokolowskis dispute its relevance. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016). If a defendant mounts a factual Fed. R. Civ. P. 12(b)(1) challenge, it must come forward with competent evidence; attorney say-so about a non-record agreement is not enough. See *Makarova*, 201 F.3d at 113 (court may consider evidence outside the pleadings on a jurisdictional motion); *Carter*, 822 F.3d at 56–57 (vacating Rule 12(b)(1) dismissal where the record did not establish lack of standing as a matter of law).

**C.    The Only Document the Debtors Point to—the Rule 3001(e) Notice of Transfer—Speaks Solely to a Transfer of the Bankruptcy "Claim" Listed on the Claims Register**

Unable to produce any assignment agreement, the Debtors lean on the ministerial Rule 3001(e) notice (ECF No. 31-1). But by its explicit text, that notice memorializes a transfer of "$4,000,000.00 of Seller's right, title, interest, claims and causes of action in and to, or arising under or in connection with, *Seller's claim (as such term is defined in Section 101(5) of the U.S.*

18

*Bankruptcy Code)… designated on the Claims Registry* as Case No. 23-10063," i.e., the estate claim on the bankruptcy registrar, not a UTPCPL claim or even undefined general "claims."

Under New York's plain-meaning rule, Form 2100A is construed by its words and limited purpose. Official Form 2100A exists to provide evidence and notice of a transfer of a bankruptcy claim and to substitute the transferee on the claims register pursuant to Fed. R. Bankr. P. 3001(e). It is not a global assignment instrument. See *U.S. Courts, Form 2100A/B Instructions* (explaining that the form "is designed to serve as evidence of the transfer") and *Fed. R. Bankr. P. 3001(e)* (clerk notice, objection window, substitution). The filing of a notice of transfer "cannot alter substantive claim ownership rights." *In re LATAM Airlines Grp. S.A.*, No. 20-11254 (JLG), slip op. at 19 (Bankr. S.D.N.Y. Sept. 13, 2022) (ordering claims agent to record the transfer but emphasizing the court was "not determining ownership" and that the order was "without prejudice to the contractual rights and remedies" in a separate New York action); *In re Enron Corp.*, No. 01-16034 (AJG), *2005 WL 3873890, at *9 n.13 (Bankr. S.D.N.Y. June 16, 2005) (only transferor has standing to object under Rule 3001(e)(2)).

New York likewise does not presume that fraud/tort claims transfer with a contract or financial instrument; there must be language "that evinces that intent," which a Rule 3001(e) notice does not contain. *Commonwealth of Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 25 N.Y.3d 543, 550 (2015); *Dexia SA/NV v. Morgan Stanley*, 135 A.D.3d 497 (1st Dep't 2016); *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157 (1990).

## D. The Debtors Cannot Enforce Any Jefferies–CM LLC Agreement Because They Have Not Proven They Are Parties or Beneficiaries

The Debtors argue that the Sokolowskis lack standing, but it is actually the Debtors who lack standing to assert their assignment defense.

Under controlling Second Circuit and New York authority, a non-party may enforce a contract only if the contract's own language unambiguously manifests an intent to permit that third party to enforce it; incidental beneficiaries cannot sue. See *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) ("a non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that 'clearly evidence an intent to permit enforcement by the third party'"); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (party claiming third-party-beneficiary status must show the contract evinces the requisite intent); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 44–45 (1985) (intent must be apparent from the contract; otherwise beneficiary is incidental); *Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710–13 (2018) (clear contractual expression required for third-party enforcement).

The Debtors have gone so far as to speculate about what the unproduced contract may contain, summarized in Table 2:

**Table 2: Debtors' Speculation on What the Contract Contains**

| |
|---|
| Source: ECF No. 30 at 13 |
| **Speculation:** "assignment and sale of the claim and related documents" |
| **Speculation:** assignment of "the right to receive future distributions" |
| **Speculation:** assignment of "the right to bring causes of action arising out of or in connection with the assigned claim" |
| **Speculation:** "additional protections in favor of Buyer" |
| **Speculation:** "a full participation right in any non-assignable claims and their recoveries" |
| **Speculation:** "an indemnity in favor of Buyer for litigation in connection with the scope of the assigned rights under the agreement." |

These assertions are unsupported by attached evidence and should be disregarded. However, the speculation itself is noteworthy because most of these speculative clauses, like "additional protections," "participation rights," "indemnities," and so on are private contractual terms that non-parties like the Debtors—and for that matter, DCG, Silbert, and Moro—would have no right to enforce anyway.

As to enforcement, neither CM LLC nor Jefferies—the actual parties to all of these documents—has taken an adversarial stance towards each other or sought enforcement action; the Debtors are the parties trying to create ill will between non-participants in this case. The Debtors have identified no document in the record whose text makes the Debtors parties or intended beneficiaries to any contract. See *Premium Mortg.*, 583 F.3d at 108; *Subaru*, 425 F.3d at 124; *Fourth Ocean*, 66 N.Y.2d at 44–45; *Dormitory Auth.*, 30 N.Y.3d at 710–13 (intended beneficiary status must be clear from the contract's language).

### E.     The Debtors Should Be Prohibited from Introducing and Arguing the Assignment Contract—Even Later—Because of Their Flagrant Violation of the Court's Directive

Even if the Debtors had obtained the contract or reply with it attached, the Court should

disallow it because their actions flagrantly violated the Rules and this Court's explicit

direction—the "**Subpoena Crisis**." After the Court decided against postponing the Sep. 15, 2025

hearing (Ex. B), the Debtors then created a crisis by unilaterally initiating rushed discovery

aimed at Jefferies and the Sokolowskis. On Sep. 8, the Debtors served:

- *subpoenas duces tecum* on Jefferies, Stephen Sokolowski, and Christopher Sokolowski (returning Sep. 11 at 5:00 p.m. at counsel's Manhattan office); and

- *subpoena ad testificandum* on a Jefferies employee (Matthew Aronsky) to appear at the Sep. 15 hearing.

See Ex. C (Subpoenas to Stephen Sokolowski); Ex. D (Subpoena to Christopher Sokolowski);

Ex. E (Subpoena to Jefferies); Ex. F (Subpoena to Matthew Aronsky).

On Sep. 10, the Sokolowskis requested an expedited informal discovery conference. ECF

No. 23. On Sep. 11, the Sep. 15 hearing was adjourned indefinitely. ECF No. 24. All targets

objected to the document subpoenas and Jefferies also requested a discovery conference. Ex. G

(Jefferies' objection to subpoena and request for discovery conference).

**Rule violations:**

1.     **Premature discovery in violation of Rule 26(d)(1):** The Debtors issued non-party

subpoenas before any Rule 26(f) conference or court order permitting expedited

discovery—contrary to Rule 26(d)(1)'s discovery moratorium. See *Request for Expedited*

*Informal Discovery Conference* (ECF No. 23) (noting "the Court did not authorize pre-hearing discovery") Federal courts in this Circuit grant expedited pre-Rule 26(f) discovery only on a showing of "reasonableness and good cause," which the Debtors never sought or obtained. See Fed. R. Civ. P. 26(d)(1); *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326–27 (S.D.N.Y. 2005) (requiring good cause); *Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) (same); *N. Atl. Operating Co. v. Evergreen Distribs., LLC*, 293 F.R.D. 363, 367 (E.D.N.Y. 2013) (same).

2.   **Facially unreasonable time to comply (Rule 45). :** The subpoenas demanded compliance within three days—Sep. 8-11—depriving recipients of the Rule 45(d)(2)(B) right to 14 days to object because they "fail[ed] to allow a reasonable time to comply." Fed. R. Civ. P. 45(d)(3)(A)(i), (d)(2)(B).

3.   **Improper place of compliance (100-mile rule).** The subpoenas commanded production in Manhattan from State College, Pa., independently warranting quashal. Fed. R. Civ. P. 45(c)(2)(A), (d)(3)(A)(ii); Exs. C-D (subpoenas to Sokolowskis; place of compliance: 1290 Avenue of the Americas, New York, NY).

4.   **Attempted live testimony on one week's notice without baseline disclosures.** The Debtors sought to compel live hearing testimony, without responding to the Sokolowskis' request for a temporary standstill for basic information about the witness Ex. F (*subpoena ad testificandum* of Matthew Aronsky); Ex. H (unanswered email sent to Debtors)

5.   **Incorrect captioning.** The subpoenas bore incorrect captions, claiming the Debtors as a plaintiff in this AP. Ex. C-F (subpoenas).

Where evidence is procured through such improper subpoenas, courts in this Circuit have ample authority to preclude its use to avoid rewarding discovery abuse—both under Fed. R. Civ.

P. 37(c)(1) and under the Court's inherent power to police its process. See *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (affirming preclusion; listing factors); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296–99 (2d Cir. 2006) (preclusion appropriate under Rule 37(c)(1)); *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) (inherent power sanctions to address litigation misconduct).

## F.   Even DCG Has Stated That the Notice of Transfer of Claim Is Sufficient and That the Full Jefferies Contract Is Unnecessary

The Debtors, who were "aligned on the requested relief" with DCG at least until several seconds before the AP was filed (Main Case, ECF No. 2213 at 2), have not addressed that its co-participant DCG itself took the position in an email to the Court that the contract is not required for this AP. In this email, DCG writes "The Debtors' latest request for adjournment so that they may take discovery from Defendants (of a single document that they have known about for months) is unfounded". Ex. B at 4 (8/27/2025 10:07AM email from Benjamin S. Kaminetzky)

Therefore, both the Sokolowskis and DCG—the two actual parties in the Pa. action at issue (the Debtors are not a party to that Action)—agree that the Notice of Transfer sufficiently describes exactly what was transferred to Jefferies: a bankruptcy claim against the Genesis estate. Therefore, any assignment contract should be precluded—from the Debtors due to their Subpoena Crisis behavior, and from DCG because its position is that the contract is irrelevant.

## G.   The Sokolowskis Are the Only Party Asserting Ownership of the UTPCPL Claim

Many briefs have been written in this AP, but throughout all of them, only one party—the Sokolowskis—has consistently asserted ownership of the UTPCPL claim. The strategy of every other party associated with this case—and also of those associated with the Sokolowskis' Pa.

Action—has been to argue that the UTPCPL cause of action is owned by someone other than themselves, and to change positions when convenient. Table 3 summarizes the contradictory and ever-changing positions of the various parties, taken directly from the existing record:

**Table 3: "You Don't Own the UTPCPL Claim, but We Don't Either"**

| Party | Argued owner | Refs |
|---|---|---|
| DCG | Jefferies (in Pa.) | *"CM assigned any claims 'arising under or in connection with' the Genesis loans to Jefferies."*<br><br>Pa. Action, ECF No. 37 at 6 |
| | CM LLC (in Pa.) | *"CM—not [the Sokolowskis]—was entitled to the rights and responsible for the obligations under the loans it made"*<br><br>DCG and Silbert's Mem. in Supp. of MTD (Pa.) at 18 |
| | Debtors (in NY) | *"derivative claims that are property of the estate"*<br><br>ECF No. 25 at 1 |
| Debtors | Not the Debtors (in private meetings) | *"To be honest, [some of] the claims [are] different from those of the estate."* and *"the consumer protection claims are direct."*<br><br>ECF No. 21 ¶¶ 6,16 |
| | Don't know (during Aug. 15 hearing) | *"We have not reached a determination that the Sokolowskis have asserted estate causes of actions."*<br><br>Aug. 15, 2025 Hr'g Tr. at 35:23-25 (statement of Phillippe Selendy). |
| | Jefferies (in public briefs) | *"[t]he Sokolowskis, through CM LLC, transferred 100% of their interest in their claims … to Jefferies"*<br><br>ECF No. 30 at 6 |

| Party | Argued owner | Refs |
|---|---|---|
| Jefferies | Declined to assert ownership | Declined to assert ownership even when directly questioned over multiple communications by email, phone, and Zoom videoconference on Sep. 9-11, 2025<br><br>Oct. 9 Decls. ¶ 10 |
| Silbert | Jefferies | *"the notice of transfer of claim… unambiguously transferred any UTPCPL claim they may have had."*<br><br>Pa. Action, ECF No. 52 at 9 |
|  | CM LLC<br>(in the same brief) | *"if there were any claim [and it was not assigned to Jefferies], it would have accrued to CM… and not Plaintiffs"*<br><br>Pa. Action, ECF No. 52 at 5 |
|  | Debtors<br>(even later in the same brief, in footnote) | *"Plaintiff does not have standing to bring any claims based on veil piercing because such claims are exclusively entrusted to the Genesis bankruptcy estate…For this reason, DCG intends to promptly file an adversary proceeding in the U.S. Bankruptcy Court for the Southern District of New York seeking to enjoin individual creditors, such as Plaintiffs, from pursuing derivative claims against it."*<br><br>Pa. Action, ECF No. 52 at 24 n.12 (internal citations omitted)) |
| Moro | Jefferies | *"Even if [the Sokolowskis] somehow had standing, which they did not, they no longer do so as a result of [CM LLC]'s assignment of its claims under the Lending Agreement to Jefferies as part of the Genesis bankruptcy proceeding."*<br><br>Pa. Action, ECF No. 38 at 5 |
| Sokolowskis | Sokolowskis | *"These claims are not part of the bankruptcy estate… Plaintiffs' UTPCPL claim is personal to them"*<br><br>Pa. Action, ECF No. 22 ¶ 21.b |

If any party had wanted to argue that they unequivocally own the UTPCPL claim, then they could have done so. No party has disputed that all entities in the above table are fully aware of this litigation web and that they have all had ample time to docket a one-page notice stating they or their organization owns the claim.

A conservative estimate by the Sokolowskis is that, across all forums, **more than 50 pages of briefing and chambers correspondence** has been written on this single topic alone in the past **9 months,** repeating the same recycled arguments. All of it should be disregarded. The Debtors have had 9 months to unequivocally state that the UTPCPL claim is derivative—which is the only ownership position they have the right to assert—and they have not.

## H.     The Debtors' Representatives Contradict Their Own Briefs Too

Not only do all the parties hold shifting, contradictory, and illogical positions, but individuals employed by the Debtors *also* contradict each other and will not assert ownership. The Debtors' representatives' positions on the Sokolowskis' claim are shown in Table 4:

**Table 4: The Debtors Say They Don't Own the Claim, But Don't Agree Who Does**

| Representative | Argument | Refs |
|---|---|---|
| Amelia Alvarez (WDOC) | Likes Sokolowskis' counterclaim asserting directness | ECF No. 21, Ex. B at 9 (Aug. 15, 2025 post) |
| Vijay Boyapati (LOC) | We don't want to enjoin any of your claims | ECF No. 20 at 33 |
| | *"Judge Lane is going to enjoin your cases"* | Oct. 9 Decls. ¶ 7 |

27

| Representative | Argument | Refs |
|---|---|---|
| Vijay Boyapati (LOC) | Our briefing was a miscommunication with Selendy Gay | ECF No. 20 at 32 |
| Phillippe Selendy (Selendy Gay) | The claims have individual characteristics | *"the Sokolowskis… these are two pro se individuals who assert only statutory individual consumer protection claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law"*<br><br>Aug. 15, 2025 Hr'g Tr. 37:25-38:5<br><br>*"it all turns on these individual claims that have been brought by the Sokolowskis"*<br><br>Aug. 15, 2025 Hr'g Tr. 40:11-13 |
| Jennifer Selendy (Selendy Gay) | The consumer protection claims are direct | ECF No. 21 ¶¶ 6,16 |
| | Whether the claim is direct depends on if it was assigned | By implication regarding proposed stipulation in ECF No. 20 at 33 |
| Debtors' Official positions | The Sokolowskis are **"creditors"** of the Debtors fallacy | **24 times** in Debtors' motion, briefs. and the hearing involving the Sokolowskis prior to filing the MTD Counterclaim; **0** in the MTD Counterclaim and its supporting memorandum<br><br>Main Case, ECF Nos. 2180, 2217 |
| | *"[t]he Sokolowskis, through CM LLC, transferred 100% of their interest in their claims … to Jefferies* | Mem. in Supp. of MTD Counterclaim (ECF No. 30) at 6 |
| | No response as to whether the UTPCPL claim is direct or derivative | Every brief written by Debtors |

| Representative | Argument | Refs |
|---|---|---|
| Sokolowskis | Sokolowskis own the claim | *"These claims are not part of the bankruptcy estate… Plaintiffs' UTPCPL claim is personal to them"*<br><br>Pa. Action, ECF No. 22 ¶ 21.b |

## I.    Reiterating Previous Arguments on Assignability

These arguments on UTPCPL assignability have been extensively briefed elsewhere.

## 1.    The UTPCPL Claims are Not Assignable (Referencing Previous Briefs)

Pa.'s longstanding aversion to the assignment of personal tort claims independently confirms the same conclusion: unliquidated, personal tort rights are not assignable before verdict. *Sensenig v. Pa. R.R. Co.*, 78 A. 91, 91 (1910) ("a right of action strictly personal is not assignable"); *Hurley v. Hurley*, 492 A.2d 439, 442–43 (1985) (recognizing the "significant property differences" between tort and contract claims and the general rule that personal injury/tort claims are not assignable). The Court need not revisit those doctrines here because they have been extensively briefed: (i) in Pa., the Opp. Mem. to MTD devotes multiple sections to *nemo dat*/assignment and agency—inter alia Section D ("Scope of the Assignment"), Section E ("Incomplete Contract"), and Section F ("CM LLC and its Agent Lacked Authority")—citing the same Rule 3001 notice attached to this docket as ECF 31-1. Pa. Action, ECF No. 44 at 58–62.

## 2.    The Debtors Are Requesting an Advisory Opinion If They Litigate Contract Law, Because, As Pleaded, CM LLC Never Possessed Any UTPCPL Claim to Assign

The UTPCPL's private right of action is consumer-specific—limited to a "person who purchases or leases goods or services primarily for personal, family, or household purposes"—so

an entity like CM LLC never owned a UTPCPL claim on these pleadings, which allege

individualized reliance and loss by Stephen and Christopher Sokolowski as consumers. See ECF

No. 20 Section V.C (quoting 73 Pa. Stat. Ann. § 201-9.2(a)) (statutory text at 7–8; see also Third

Circuit authority that business purchases don't confer UTPCPL standing, *Gemini Physical*

*Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63, 65 (3d Cir. 1994) and

*Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 241 42 (3d Cir. 2002). The Pa.

MTD Opp. likewise explains the personal/household-use requirement and that Plaintiffs

purchased a bundled financial **service** (not a business loan). Pa. Action, ECF No. 44 at 21–22 &

35–36.

From there, *nemo dat* finishes the point. See ECF No. 20 Section V.F (non-assignability

& *nemo dat*) (collecting *Gemini*, *Needle*, and *Legal Capital*). Because CM LLC never owned a

UTPCPL claim, it had nothing to assign to Jefferies. An assignee "stands in the shoes of the

assignor" and cannot assert rights greater than those possessed by the assignor. *Hedlund Mfg. Co.*

*v. Weiser, Stapler & Spivak*, 539 A.2d 357, 358 (1988); *Legal Capital, LLC v. Med. Prof'l Liab.*

*Catastrophe Loss Fund*, 750 A.2d 299, 302 (Pa. 2000) (same); see also *In re Enron Corp.*, 379

B.R. 425, 436 (S.D.N.Y. 2007) ("An assignee of a claim takes no more than the assignor had to

give"), and *In re KB Toys, Inc.*, 736 F.3d 247, 252 (3d Cir. 2013) (disabilities attach to and travel

with the claim).

### 3.   Even If Assignable, The Debtors Provide No Document Signed by the Sokolowskis Assigning Their UTPCPL Claims

Here, the only documents on the record are those which Stephen Sokolowski executed

expressly as "Owner" of CM LLC (ex. Rule 3001(e) Notice of Transfer of Claim – E1). Even if

such a cause of action were assignable, the Debtors attach no evidence showing that either

Stephen or Christopher Sokolowski, in a personal capacity, executed any instrument assigning away their own UTPCPL causes of action.

Pennsylvania law treats an LLC as a juridically distinct entity from its members—"[a] limited liability company is an entity distinct from its member or members." 15 Pa. Cons. Stat. § 8818(a). Any assignment of an individual's litigation rights would require an instrument executed by the individual or a duly authorized agent with specific authority "to pursue claims and litigation." 20 Pa. Cons. Stat. §§ 5602(a)(20), 5603(s). The Debtors identify none. See Pa. Action, ECF No. 44 at 74-75 (arguing Stephen signed bankruptcy proof-of-claim as "Owner" of CM LLC and actions taken on the LLC's behalf bind only the LLC) (citing *Bolus v. United Penn Bank*, 525 A.2d 1215 (Pa. Super. Ct. 1987))); ECF No. 31-1 (signature block reflecting "Owner").

## VI.    The Sealed Exhibits Are Irrelevant to Rule 12(b)(1) and Should Not Slow Adjudication

The Debtors submitted two documents under seal. The Debtors' own filings identify what the sealed material is—and, critically, what it is not. The Declaration attaches the public Notice of Transfer of Claim – E1, two sealed claim-agent printouts of proofs of claim, and an email from DCG attorney Benjamin Kaminetzky opposing any adjournment. ECF No. 31 ¶¶ 3–6 & Exs. 1–4. The accompanying Motion to Seal confirms that the redactions concern non-public claim-administration information and personally identifiable information ("PII"); it does not purport to include a Jefferies assignment agreement or any operative language of such a contract. ECF No. 32 at 2, 5–9. Proof-of-claim printouts—the documents the Debtors move to seal— cannot supply the missing contract terms, cannot transform a claims-register transfer into

something else, and do not resolve the direct/derivative pleading question presented in the Sokolowskis' counterclaim.

Because the Sokolowskis seek speed, not secrecy, they do not object to unsealing the proofs of claim in full; alternatively, if the Court prefers to keep limited redactions for PII or claim-administration details under 11 U.S.C. § 107(b), they likewise do not object. DCG has pressed chambers to avoid delay and "hold firm" on promptly resolving the dispositive legal issues—a point memorialized in an email. ECF No. 31, Ex. 4. The Court may review the materials *in camera* or on the public docket and proceed to decision; only if the Court concludes those exhibits are case-dispositive should it allow a brief, targeted sur-reply. See *In re Orion Pictures Corp.*, 21 F.3d 24, 27–28 (2d Cir. 1994) (*in camera* review); *In re Global Crossing, Ltd.*, 295 B.R. 720, 724–26 (Bankr. S.D.N.Y. 2003) (§ 107(b) sealing of confidential commercial info); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006) (balancing access with protection); *Carter*, 822 F.3d at 56–57 (ensuring parties have a fair opportunity to address materials relied on to resolve standing).

## VII.   The UTPCPL Claim Is Direct (Summary; See Prior Briefs)

This AP turns on a law-only question that resolve all issues: whether the Sokolowskis' Pennsylvania UTPCPL claim, as pleaded in the first-filed Pa. Action, is a direct, personal, consumer claim or is derivative. The Sokolowskis' counterclaim explains why a declaration of *directness* is case-dispositive. ECF No. 12 ¶¶ 32–41 (law-only request; UTPCPL remedy runs to the individual consumer).

**Framework:** Pennsylvania's UTPCPL protects consumers who purchase or lease goods or services for personal, family, or household use and suffer ascertainable loss. See ECF No. 20 Section V.C ("Pa.'s Framework: Consumer-Owned, Reliance-Based, Liberally Construed").

**Application to the Pleadings:** The Pa. Complaint alleges the Sokolowskis personally purchased a retail service, relied on DCG-linked misrepresentations, and suffered out-of-pocket loss—injury unique to them, not a generalized, estate-wide harm. See ECF No. 20 Section V.D ("Direct on the Face of the Pleadings") ; see also Pa. Action, ECF No. 44 Sections II–III (consumer purchase; disclaimers do not bar UTPCPL fraud claims).

**Bankruptcy overlay:** Plan language and bankruptcy concepts cannot convert a *consumer-owned* UTPCPL right into estate property. See ECF No. 20 Section V.E ("Bankruptcy Law Cannot Convert a Consumer-Only Right into Estate Property").

## VIII.  ONLY IN THE ALTERNATIVE: A Plan If the Court Is Not Convinced There Is a Live Controversy, or Decides to Explore Assignment

Jefferies, despite being notified of this case and the Sokolowskis' UTPCPL claims, has not asserted that it owns the claims at issue, and neither CM LLC, the Sokolowskis, nor Jefferies have expressed adversity and there is no live controversy between them. Oct. 9 Decls. ¶ 10. The Debtors are the party attempting to poison the Sokolowskis' and CM LLC's relationship with Jefferies. Jefferies should not be unwillingly joined into unnecessary, expensive, and time-consuming briefing—in which it has demonstrated no interest—solely because the Debtors (and not even DCG) assert Jefferies' ownership of the claims at issue. The Sokolowskis have additionally argued extensively in Section IV that a live controversy exists. Therefore, discovery

is not required to decide this motion. However, if the Court decides that discovery is necessary, the Sokolowskis respectfully suggest a specific sequence for efficiency.

## A.      If Contract Interpretation is Necessary, Jefferies Should Weigh In First

To consider the Debtors' assignment theory, the Court must first be willing to hold all of the following:

1.  As a matter of pure law, Pennsylvania UTPCPL statutory torts are assignable;

2.  The Debtors' violation of the Court's directives and their behavior by creating the Subpoena Crisis (Section V.E, *infra*) does not exclude them from relying on those documents;

3.  Because the Pa. Action, as pleaded in the Sokolowskis' names, would fail anyway if CM LLC somehow could own a UTPCPL claim, an advisory opinion is permissible on whether CM LLC, who is not the plaintiff, assigned a claim. (*nemo dat*)

If (and only if) the Court is inclined to entertain the Debtors' assignment theory, the efficient course under the Federal Rules is to, *before* any contract law is litigated, determine Jefferies's position.

First, Fed. R. Civ. P. 17 (made applicable by Fed. R. Bankr. P. 7017) requires that an action be prosecuted "in the name of the real party in interest" and "prohibits" dismissal on that ground "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted." Fed. R. Civ. P. 17(a)(1), (a)(3). The Second Circuit has long instructed that the "proper course" when a party raises a real-party-in-interest objection is to allow ratification, joinder, or substitution rather than precipitous dismissal. See *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) (vacating dismissal and directing the district court to permit the true owners to proceed). That principle has only been

reinforced: "Rule 17(a)(3) allows substitution of the real party in interest so long as doing so does not change the substance of the action and does not reflect bad faith from the plaintiffs or unfairness to the defendants." *Klein v. Cadian Capital Mgmt., LP*, 746 F. App'x 36, 39 (2d Cir. 2018) (summary order).

Second, Fed. R. Civ. P. 19 (made applicable by Fed. R. Bankr. P. 7019) addresses required joinder of claimants whose asserted interests could be impaired or could expose existing parties to inconsistent obligations. The Supreme Court emphasizes that courts should resolve disputes "by wholes, whenever possible," and evaluate prejudice to absent claimants before adjudicating away interests in their absence. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 867–69 (2008). At the same time, the Second Circuit is clear that Rule 19 is not a license for one litigant to invent another's interest—"[i]t is the absent party that must 'claim an interest'" within the meaning of Rule 19(a)(1)(B). *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) (affirming denial of dismissal for non-joinder where the purportedly necessary party had not asserted any claim). Here, the Debtors cannot speak for Jefferies.

## B.    A Streamlined Method to Protect Jefferies's Rights With Minimal Delay and No Briefing If Jefferies Disclaims—the "Jefferies Election Protocol"

If (and only if) the Court reaches assignment, the Sokolowskis suggest the following non-advisory sequence under Rule 17(a)(3) and Rule 24 (as incorporated by Fed. R. Bankr. P. 7017 and 7024) to confirm Jefferies's position (the "**Jefferies Election Protocol.**").

- **Jefferies election:** Direct service under Fed. R. Bankr. P. 7004 of this Court's order and the pleadings on Jefferies. Jefferies is then required, within 14 days of service, to either move to intervene as an adverse claimant under Fed. R. Civ. P. 24, limited to assignment,

if it wishes to assert it owns the Sokolowskis' personal, individual UTPCPL claims, while also being informed that a non-response will be treated as a limited disclaimer.

- **Non-response:** If Jefferies does not respond after proper service, its silence shall be treated as a limited disclaimer of the Sokolowskis' personal, individual UTPCPL claims only for purposes of this AP only, and the Debtors (and DCG) shall be precluded from invoking any purported Jefferies contract rights for the remainder of this AP. For clarity, a non-response by Jefferies would not waive, release, assign, estop, impair, or adjudicate any Jefferies right, title, or interest in or to the bankruptcy claim, any Form 2100A transfer, or any distributions, allowance, setoff, or plan-related rights in the main bankruptcy case.

- **Appearance**: If Jefferies appears, it must do so only as an "adverse claimant," not as a substitute plaintiff. The Sokolowskis will then oppose Jefferies' assertion on nonassignability, *nemo dat,* and contract interpretation grounds, and a briefing and discovery schedule should be set to litigate assignment between the Sokolowskis and Jefferies. The discovery should include any indemnification, cost sharing, or similar agreements (if they exist) between the Debtors, DCG, and Jefferies. The Court should deny late intervention as untimely. See *NAACP v. New York*, 413 U.S. 345, 365–66 (1973) (timeliness is a threshold requirement for intervention); see also *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377–81 (1987) (recognizing district court's discretion to place restrictions on permissive intervention).

This sequencing implements Rule 17's purpose—finality without advisory rulings—and avoids forcing the Sokolowskis to brief a non-party's private contract for free. Unless Jefferies

elects to appear as an adverse claimant, no discovery should be permitted into any Jefferies purchase/assignment agreement or related ownership issues; good cause exists for a protective order under Fed. R. Civ. P. 26(c) (incorporated by Bankr. P. 7026) given the minimal probative value post-election and the burden/expense on the litigants. See *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–36 (1984) (recognizing broad discretion to issue protective orders on a showing of good cause).

A ratification option would only create delay and unnecessary briefing over amending the counterclaim, just to arrive at the same position as an appearance under the Protocol would have. If the Court were to offer ratification under Rule 17(a)(3) and Jefferies ratifies, the Sokolowskis would seek leave under Fed. R. Civ. P. 15 (as incorporated by Bankr. R. 7015) anyway to join Jefferies under Fed. R. Civ. P. 13(h)/Fed. R. Civ. P. 19(a)(1)(B) so that assignment can be resolved in this AP with finality, rather than being relitigated in Pa.—just as the Sokolowskis are attempting to do with this counterclaim to prevent "do-overs" of the "derivative" defense in Pa. See *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave "freely given when justice so requires"); *Block v. First Blood Assocs*., 988 F.2d 344, 350 (2d Cir. 1993) (no denial absent prejudice/bad faith). The Jefferies Election Protocol is superior because intervention timeliness and conditions are within the Court's discretion, and Jefferies is provided with a cost-free method to decline interest if it chooses.

## C.   The Time-Limited Discovery Protocol Is Tailored to the Unclean Hands and Equity Showings for DCG's Preliminary Injunction Request—And It Minimizes Cost, Delay, And Distraction

In parallel with the directive to Jefferies, the Court must adopt the Sokolowskis' short DP because it discovers the factual material that proves there is a live controversy, and will also be required for the equitable defense to DCG's primary claim: whether DCG (and the Debtors)

engaged in conduct that has an "immediate and necessary relation to the equity" they seek—i.e.,

to enjoin the Sokolowskis' first-filed consumer claim. See ECF No. 21, Ex. A (proposed DP);

*Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814–16

(1945); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 244–46 (1933). Should

contact with Jefferies not be required, and the court is already satisfied that there is a live

controversy, the DP can still be executed to examine the equities of DCG's injunction request

when the merits are litigated. The DP is the least-cost path for developing the record the Court

will need. See *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (recognizing the broad scope of

discovery, including into intent and internal communications); *Oppenheimer Fund, Inc. v.

Sanders*, 437 U.S. 340, 351–52 (1978) (holding that discovery is limited to matters relevant to

the subject of the action and must remain proportional); *Univ. of Tex. v. Camenisch*, 451 U.S.

390, 395 (1981) (explaining that preliminary injunction proceedings rely on an abbreviated

record and limited discovery).

    DCG itself says there is no need for discovery into party "communications": "Nor is any

discovery regarding DCG's communications with the Debtors, or the Sokolowskis'

communications … necessary or relevant"—because the PI presents a "pure question of law"

and such communications "has no potential bearing" on adjudicating it. On DCG's own framing,

a short, minimal protocol would merely confirm that "[n]o 'narrative' of communications among

litigants could … inform the Court's legal analysis" or "demonstrate that the equities or public

interest' weigh against an injunction." ECF No. 25 at 6, 15-16. See also *Winter v. Nat. Res. Def.

Council, Inc.*, 555 U.S. 7, 20–24 (2008) (articulating the four-factor test for preliminary

injunctions and emphasizing their extraordinary nature); *Salinger v. Colting*, 607 F.3d 68, 77–83

(2d Cir. 2010) (adopting *Winter*'s standard in the Second Circuit and requiring specific findings on each factor).

## CONCLUSION

The Debtors' Rule 12(b)(1) motion is based on the notions that no live controversy exists and that a missing contract assigned the Sokolowskis' claims. Neither premise withstands scrutiny.

As to the live controversy argument, DCG and the Debtors have participated in a continuing course of conduct across more than three years in two separate phases aimed at ensuring that DCG retains the Sokolowskis' life savings. In this Second Phase, they argue publicly over who should take the blame for the creation of their AP, while the Debtors execute the plan in private. The Debtors' coordination with DCG to enjoin the Sokolowskis' claims is a "definite and concrete" dispute of "sufficient immediacy and reality" under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. *Aetna*, 300 U.S. at 240–41; *Md. Cas.*, 312 U.S. at 273; *MedImmune*, 549 U.S. at 127. The fact that the Debtors have not mooted this adversary proceeding with a single page, as they easily could, is the clearest evidence that their and DCG's objectives remain aligned.  The Sokolowskis cannot litigate for several more years under their pressure only to have the Debtors reappear at the last minute to claim the proceeds.

As to the assignment argument, a party pressing a factual jurisdictional challenge bears the burden to supply competent evidence; attorney argument and administrative paperwork are not enough. And where the dispute concerns the existence, validity, or scope of an alleged assignment, the Second Circuit has squarely held that it concerns contractual standing and the merits, not Article III. The Debtors identify no contract text assigning away the Sokolowskis'

39

personal claims and no basis to enforce any Jefferies–CM LLC arrangement as intended

third-party beneficiaries given that neither contract party has moved to enforce it.

The Debtors' Rule 12(b)(1) motion can and should be decided without discovery now

because there is overwhelming evidence of a coordinated plan between the Debtors and DCG

that creates a live controversy, and the Debtors' jurisdictional theory rests on an unproduced

contract. As written in the attached Proposed Order (Ex. A,) the motion should be **DENIED**, and

the Debtors **ORDERED** to answer the counterclaim. In the alternative, if discovery is necessary,

the Jefferies Election Protocol (Section VIII.B, *infra*) and the Discovery Protocol (ECF No. 21,

Ex. A) should be ordered in parallel.

Dated: Oct. 9, 2025

Respectfully submitted,

/s/ Stephen H. Sokolowski
Stephen H. Sokolowski, Pro Se
3178 Carnegie Drive
State College, PA 16803
814 600-9800
steve@shoemakervillage.org

/s/ Christopher H. Sokolowski
Christopher H. Sokolowski, Pro Se
3178 Carnegie Drive
State College, PA 16803
814 600-9804
chris@shoemakervillage.org